108 P.3d 779 (2005)
153 Wash.2d 795
In the Matter of the MARRIAGE OF Dawud A. MUHAMMAD, Respondent, and
Cherry Muhammad, Petitioner.
No. 75061-1.
Supreme Court of Washington, En Banc.
Argued October 28, 2004.
Decided March 24, 2005.
Patricia S. Novotny, Sara Lyle Ainsworth, Northwest Womens Law Center, Brendan Finucane Patrick, Seattle, for Petitioner.
Leslie Orville Stomsvik, Tacoma, for Respondent.
Narda D. Pierce, Olympia, for Amicus Curiae (Attorney General).
Jennie Rebecca Laird, Seattle Divorce Services, Seattle, for Amicus Curiae (Columbia Legal Services).
Raegen Nicole Rasnic, Seattle, for Amicus Curiae (Domestic Violence Legal Empowerment and Appeals Project et al).
Eleanor H. Smith, David B. Byrd, Zuckerman, Spaeder, LLP, Washington, DC, for Amicus Curiae (Domestic Violence Legal Empowerment and Appeals Project et al).
Patricia E. Kahn, Green & Yalowitz, Seattle, for Amicus Curiae (Northwest Womens Law Center).
Judith Anne Redford-Hall, Tumwater, for Amicus Curiae (The Battered Women's Justice Project of the Pennsylvania ... and The Nat'l Assn of Women Lawyers Domestic Violence Report).
*780 OWENS, J.
¶ 1 This case concerns the property division that occurred during the dissolution of the marriage of petitioner Cherry Gilbert, formerly known as Cherry Muhammad (Gilbert) and respondent Dawud Muhammad (Muhammad). Unfortunately, it appears the trial court considered marital fault in distributing the parties' property, disfavoring Gilbert because she obtained an order of protection against Muhammad based on charges of domestic violence. Division Two of the Court of Appeals affirmed the trial court's distribution of the parties' assets and liabilities, finding that there was no improper consideration of fault. In re Marriage of Muhammad, *781 119 Wash.App. 166, 174, 79 P.3d 483 (2003). Because we hold that fault was considered, and that such considerations constitute an abuse of discretion, we reverse and remand for a new trial on the issue of the property division and instruct the Pierce County Superior Court to assign a new trial judge for the rehearing of the case.

FACTS
¶ 2 Gilbert and Muhammad lived together continuously as unmarried cohabitants from December 1994 to August 1996 (approximately 20 months), at which point they became married. The parties separated on April 3, 2001, and dissolved their marriage on April 5, 2002. During the period from the parties' initial cohabitation until just prior to the dissolution, Muhammad was employed as a deputy sheriff in King County. Gilbert was employed by Albertson's and Pierce County Transit during the same period.
¶ 3 On the date of separation, events occurred that would, unfortunately, later become intertwined with the property distribution in the parties' marriage dissolution. On the afternoon of April 3, 2001, Muhammad engaged Gilbert and her sister in argument. The police were dispatched based on allegations that Muhammad pointed a weapon at the two women and threatened them. Though he denied brandishing a weapon or making the threats, Muhammad was arrested and charged with two counts each of domestic violence harassment and intimidation with a deadly weapon. Based on the domestic violence allegations, Gilbert obtained an order of protection in Pierce County Superior Court on November 16, 2001. As part of the trial court's order, Muhammad was barred from owning or possessing a firearm in any capacity. For Muhammad, the consequences of having the firearm prohibition placed in the trial court's order of protection included losing his job as a deputy sheriff.
¶ 4 Subsequent to the order of protection, the dissolution proceeded in a separate trial court, which was responsible for distributing the parties' assets and liabilities. The assets at issue were generally limited to the following: (1) Muhammad's pension valued at approximately $38,400, (2) Gilbert's Albertson's and Pierce County Transit pensions totaling approximately $7,625, (3) two cars, (4) a tax refund, (5) four savings bonds, (6) personal property, and (7) a house that was in foreclosure proceedings. Clerk's Papers (CP) at 13-14. Approximately $8,200 of Muhammad's $38,400 pension was accumulated during the 20-month premarriage cohabitation of the parties.[1] The parties' liabilities included: (1) first and second mortgages on the home totaling $155,500, (2) $1,232 in property taxes, (3) phone bills in excess of $4,000, (4) credit account debt of approximately $4,575, and (5) debt owing on the parties' two cars.
¶ 5 The trial court appears to have divided the assets evenly with one important exception: Muhammad and Gilbert were each awarded their undivided pensions, valued at $38,400 and $7,625, respectively. In the findings of fact, the trial court stated that if the pensions were to have been evenly divided, each party would have received approximately $21,400, which meant that under the court's division Muhammad was receiving $8,800 more, and Gilbert $8,800 less, than 50 percent.[2] Despite recognizing the disparity, the trial court awarded the pension benefits as they were held by the parties. The trial court also declined to divide the approximately $8,200 of Muhammad's pension earned during the 20-month meretricious relationship but instead awarded it entirely to Muhammad *782 on the grounds that the amount was "minimal." CP at 19.
¶ 6 In ruling from the bench, the trial court remarked extensively on the relationship between Muhammad's unemployment and Gilbert's decision to obtain a protective order. These remarks include the following excerpts:
In one sense I do think that Mrs. Muhammad has sought to punish Mr. Muhammad and that's not to say that he didn't bring a considerable amount of this on himself by at least some level of his own activities....
....
I think what's probably most troubling here in regard to how you try to resolve the rather minimal property issues that we have is the protection order problem. She had to know or at least should have known or should have been told that if she proceeded with this protection order, that he was not going to have a job and he wasn't going to have an income and he wasn't going to be able to pay his debts, let alone the mortgage payments.
Now, from her side of the fence obviously that's a catch 22 because she felt she needed the protection order, and if she felt she really needed the protection order, then she had to proceed with that. But then I think if that's the situation, she has to recognize the consequences and you can't just ignore the fact that there are consequences. Fairly substantial consequences. Those consequences have been taken into consideration in terms of trying to make the distribution somewhat equitable.

Verbatim Report of Proceedings (VRP) (Jan. 24, 2002) at 2-4 (emphasis added). In assigning liability to the parties for the two mortgages on the home purchased by Muhammad before the marriage, the trial court went on to engage in the following colloquy with counsel:
[THE COURT:] I'm going to obviously make him hold her harmless for at least half of that [mortgage] debt. But I'm not going to make him hold her harmless for the whole thing because this relates to what I'm talking about in the sense of she was in a bit of a catch 22 on this  in this order, protection order but she had to know what the consequences were and the consequences basically were that he wasn't going to be able to pay that.

THE COURT: And he made payments or it's true that he's like $7000 behind or whatever he is, but you know, I just don't see that if she's going to put him out of a job, what does she expect him to pay and what does she expect him to do? I don't see that happening. It's not going to get paid. And I'm not saying she did it deliberately.
MR. BENJAMIN: Really we would say he put himself out of [a] job when he threatened the sister with the gun.
THE COURT: That's why I say it's a catch 22.
MR. BENJAMIN: We get the feeling she is getting punished by the Court for getting the protection order.
THE COURT: I'm doing what I think is fair and what I think is fair is to walk out of this marriage of four and a half years with essentially what they had, if they can and that can't be done in his case. I mean it just can't be done. So no, I am not trying to punish anybody.
VRP (Jan. 24, 2002) at 10-11, 14-15 (emphasis added). Finally, the formal findings of fact in the dissolution decree include the following:
By the Respondent [Gilbert] obtaining a permanent domestic violence protection order against the Petitioner, Dawud A. Muhammad, said Petitioner no longer has the ability under Federal Law to own or use a weapon.
The ability to own and use a weapon is a condition of his employment through the King County Sheriff's Office or any other law enforcement agency.
As a result of the Petitioner's being unable to own or use a weapon, the Petitioner has been terminated from his employment with the King County Sheriff's Office and is not eligible for any law enforcement position at this time.
The only work for which the Petitioner is qualified at this time is as a law enforcement *783 officer and he is currently unemployed.
The Respondent knew, and has known for some considerable period of time, that by seeking and making the protection order permanent she would effectively terminate her husband's ability to work.
By virtue of the obtaining of the permanent domestic violence protection order the Petitioner's ability to obtain gainful employment or meaningful retirement benefits in the future is severely limited due to his education and training.
CP at 17 (emphasis added).[3] Notably, the trial court did provide some indication that he was attempting to balance the pension disparity between Muhammad and Gilbert by awarding Gilbert the personal property in her possession at dissolution, though no formal finding of fact as to value was included in the dissolution decree.[4] VRP (Jan. 24, 2002) at 5-6.
¶ 7 Gilbert appealed the trial court's property distribution to Division Two of the Court of Appeals on two grounds. First, Gilbert assigned error to the trial court's consideration of the order of protection in distributing the community assets and liabilities. Second, Gilbert assigned error to the trial court's failure to award her some portion of the approximately $8,200 of Muhammad's pension that accrued during the meretricious relationship. In a divided opinion, the Court of Appeals affirmed. Muhammad, 119 Wash.App. at 174, 79 P.3d 483. The court held that while the trial court's remarks "may have been inartful ... the property division was not an abuse of discretion." Id. at 167-68, 79 P.3d 483. The court reasoned that although fault cannot be considered by the trial court when distributing the property, taking account of the economic circumstances of the parties, including Muhammad's unemployment, was valid. Id. at 174, 79 P.3d 483. The court went on to conclude that "[n]either the text of the trial court's opinion nor its written findings reflect a causal link between the obtaining of the order  the `fault' on the part of Cherry [Gilbert]  and the disparate property division as a punishment." Id. The Court of Appeals did not address the trial court's designation of the portion of Muhammad's pension acquired during the parties' meretricious relationship as "minimal."

ISSUES
¶ 8 1. Whether the trial court improperly weighed Gilbert's decision to obtain a domestic violence protection order against her as "marital fault" during the property distribution in the parties' dissolution of marriage.
¶ 9 2. Whether the trial court failed to properly consider the portion of Muhammad's pension that accrued during the parties' 20-month meretricious relationship that preceded their marriage.
¶ 10 3. Whether Gilbert is entitled to attorney fees and costs pursuant to RCW 26.09.140.

STANDARD OF REVIEW
¶ 11 A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion. In re Marriage of Kraft, 119 Wash.2d 438, 450, 832 P.2d 871 (1992). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997).

ANALYSIS

A. Consideration of the Protection Order
¶ 12 In a marriage dissolution proceeding, the trial court must "dispos[e] of the property and the liabilities of the parties, *784 either community or separate, as shall appear just and equitable after considering all relevant factors." RCW 26.09.080. Such factors include "[t]he economic circumstances of each spouse at the time the division of property is to become effective" but may not include "marital misconduct." Id. § .080(4). While courts have held that negatively productive conduct that causes the dissipation of marital assets can be considered, marital fault alone is not an appropriate consideration. See, e.g., In re Marriage of Steadman, 63 Wash.App. 523, 527-28, 821 P.2d 59 (1991) (holding that the "marital misconduct" at issue in RCW 26.09.080 "refers to immoral or physically abusive conduct within the marital relationship[, not] gross fiscal improvidence, the squandering of marital assets or ... the deliberate and unnecessary incurring of tax liabilities" (footnote omitted)); In re Marriage of Clark, 13 Wash.App. 805, 808-09, 538 P.2d 145 (1975) (taking account of how labor or negatively productive conduct created or dissipated certain marital assets is appropriate).
¶ 13 A number of aspects of the property division strongly indicate that the trial court went beyond simply looking to the parties' existing economic circumstances, but instead weighed Gilbert's decision to obtain a protective order against her. First, there is the large disparity between the values of the parties' pensions that accrued during the marriage. Although the exact value of the personal property awarded to Gilbert and Muhammad is not before us, the payment of approximately $12,287 to $15,250 from Muhammad to Gilbert that would have been required to offset the pension disparity cannot be fully accounted for. Second, the classification of approximately $8,200 of Muhammad's pension earned during the meretricious relationship as "minimal," where that portion constituted approximately 21 percent of the total amount at issue ($38,400), is inexplicable. CP at 19. There are very few people for whom half of $8,200 is a "minimal" amount, and given the total assets and liabilities at issue in this dissolution proceeding, Gilbert and Muhammad are clearly not among them. Third, there is the decision to make Gilbert liable for half of any deficiency on the home because, as the trial court stated from the bench, "I just don't see that if she's going to put him out of a job, what does she expect him to pay and what does she expect him to do?" VRP (Jan. 24, 2002) at 14 (emphasis added).
¶ 14 Beyond the highly questionable division of the parties' assets and liabilities, the language used by the trial court in the oral ruling and written findings of fact also suggests an improper consideration of Gilbert's "fault." For instance, statements regarding the trial court's belief that Gilbert obtained the protective order because she "sought to punish" Muhammad, and that Gilbert had to "recognize the consequences" that were "taken into consideration in terms of trying to make the distribution somewhat equitable," have no discernable purpose other than to attempt to justify the use of "fault" in dividing the property. See VRP (Jan. 24, 2002) at 2-4. Most striking of all are the written findings of fact, which read like a logical syllogism linking Muhammad's unemployment and purported unemployability to Gilbert's decision to obtain the protective order. See CP at 17. Specifically, the fifth finding in section 2.20 of the findings of fact and conclusions of law states that Gilbert "knew, and has known for some considerable period of time, that by seeking and making the protection order permanent she would effectively terminate her husband's ability to work." Id. This finding begs the question, what purpose could the trial court have had for taking notice of Gilbert's "knowledge" about the effect of the protective order except to establish causation and assign fault? No acceptable answer to this question is apparent.
¶ 15 Despite our conclusion that the trial court abused its discretion, we decline to go further and hold, as Gilbert requests, that a job loss resulting from a domestic violence allegation or conviction constitutes negatively productive conduct that may be weighed against the unemployed party. Such a holding would require the imposition of a new rule, as no court in this state has held that at-will employment is a marital asset that may be dissipated.[5] The only asset recognized *785 by our courts that is at all similar to employment is economic goodwill, which requires more than access to an income stream. See In re Marriage of Hall, 103 Wash.2d 236, 241-42, 692 P.2d 175 (1984) ("[g]oodwill is not the earning capacity itself." A salaried professional cannot possess goodwill as a matter of law since there is no "business or practice to which [it] can attach").
¶ 16 In sum, we hold that the language in the trial court's oral ruling and written findings of fact, along with the questionable aspects of the property division itself, establish a clear inference that the court improperly considered Gilbert's decision to obtain a protective order against Muhammad as "marital misconduct." The consideration of marital misconduct is explicitly prohibited in RCW 26.09.080. Accordingly, the trial court's property division was "manifestly unreasonable or based on untenable grounds or untenable reasons" amounting to an abuse of discretion. See Littlefield, 133 Wash.2d at 46-47, 940 P.2d 1362.

B. Meretricious Relationship
¶ 17 As a general rule, property acquired during a meretricious relationship is divisible upon dissolution of the relationship. Connell v. Francisco, 127 Wash.2d 339, 347, 349, 898 P.2d 831 (1995) ("property that would have been characterized as community property had the parties been married .... is properly before a trial court and is subject to a just and equitable distribution"). The record indicates that the trial court gave consideration to the approximately $8,200 of Muhammad's pension that accrued during the meretricious relationship, classifying the amount as "minimal" within the greater distribution scheme. However, as noted above, this aspect of the distribution is intertwined with the court's error in assigning fault to Gilbert for obtaining the protective order. As such, we note only that all assets acquired by both parties during the meretricious relationship must be reconsidered on remand.

C. Attorney Fees
¶ 18 An award of attorney fees and costs may be granted in an appellate court's discretion under RCW 26.09.140. Upon a request for fees and costs under RCW 26.09.140, courts will consider "the parties' relative ability to pay" and "the arguable merit of the issues raised on appeal." In re Marriage of Leslie, 90 Wash.App. 796, 807, 954 P.2d 330 (1998). In this case, we find that the issue raised by Gilbert on appeal had considerable merit. However, the current economic circumstances of the parties are unknown. Accordingly, upon remand, the parties may submit evidence regarding Muhammad's ability to pay attorney fees associated with the appeal, and the trial court may order such payment if appropriate.

CONCLUSION
¶ 19 The trial court's division of the parties' property in the dissolution decree was an abuse of discretion because marital fault was improperly considered. The decision of the Court of Appeals affirming the trial court is therefore reversed, and the matter is remanded for new property division proceedings. Additionally, for the sole purpose of avoiding any appearance of unfairness or bias, we instruct the Pierce County Superior Court to assign this case to a new trial judge. Gilbert's request for attorney fees and costs pursuant to RCW 26.09.140 is subject to consideration on remand. We recognize that this outcome may ultimately result in a hollow victory for Gilbert in that the assets at issue are likely to have dissipated long ago. However, the legal principle must be clear: a trial court cannot hold one spouse's assertion of his or her legal right to a protective order against that spouse during the property distribution where the order results in the loss of employment for the other spouse.
WE CONCUR: MADSEN, BRIDGE, CHAMBERS, FAIRHURST, JJ., and IRELAND, J. Pro Tem.
*786 ALEXANDER, C.J. (concurring in part, dissenting in part).
¶ 20 I agree with the majority of this court that the Court of Appeals should be reversed and the matter remanded to the trial court for a new trial on the issue of property division.
¶ 21 I disagree, however, with the majority's instruction to the Pierce County Superior Court to assign the case to "a new trial judge" for the purpose "of avoiding any appearance of unfairness or bias." Majority at 785. The trial judge who presided over this marriage dissolution proceeding is a veteran judge who is well respected in his jurisdiction and statewide. In my view, he is fully capable of doing what most trial judges have to do from time to time and that is to consider a case anew on remand after his or her decision in the case has been reversed in whole or in part by an appellate court. Disqualification of a trial judge on remand should be ordered only in extreme cases where there are indications in the record that the trial judge is unwilling or unable to fairly consider the case on remand. There is no such indication in the record before us and, therefore, there should be no change of judge at the new trial.
C. JOHNSON, J., concurs.
SANDERS, J. (dissenting).
¶ 22 Property divisions lie firmly within the sound discretion of the trial judge. "Trial court decisions in dissolution proceedings will seldom be changed on appeal. The party who challenges a decision in a dissolution proceeding must demonstrate that the trial court manifestly abused its discretion." In re Marriage of Stenshoel, 72 Wash.App. 800, 803, 866 P.2d 635 (1993) (citing In re Marriage of Griffin, 114 Wash.2d 772, 776, 791 P.2d 519 (1990)). The majority finds the trial judge abused his discretion here by considering marital fault. Majority at 785.[1] I dissent because the judge based his decision on the economic realities of the case, not fault of the parties.
¶ 23 RCW 26.09.080 requires a fair and equitable distribution of the property without regard to fault, while still considering the economic circumstances of the parties.[2] "[Fairness] is attained by considering all of the circumstances of the marriage, past and present, with an eye to the future needs of the persons involved. Fairness is decided by the exercise of wise and sound discretion not by set or inflexible rules." In re Marriage of Clark, 13 Wash.App. 805, 810, 538 P.2d 145 (1975), review denied, 86 Wash.2d 1001 (1975). The property division need not be mathematically precise: "Thus, in making a division of the property the law does not impel an equal or exact division of the community property of the parties. The disposition only need be just and equitable, and wide latitude and discretionary powers are vested in the trial court in order to accomplish this division." Rogstad v. Rogstad, 74 Wash.2d 736, 738, 446 P.2d 340 (1968).
¶ 24 Abuse of discretion depends on what the court considered and how it reached its decision. Courts cannot consider "marital fault," but the equitable distribution must be fair. Dawud Muhammad's domestic abuse cannot be considered, but the fact is he is currently unemployed for whatever reason. *787 And the statute specifically lists as a factor the "economic circumstances of each spouse at the time the division of property is to become effective." RCW 26.09.080(4).
¶ 25 The trial court divided the assets of this relatively short marriage equitably by considering the relevant statutory criteria. The court recognized that Muhammad was unemployed, and yet still imposed on him half of the community's debts. The court did not view the disparity between the two pension awards as punishing Cherry Gilbert. See Verbatim Report of Proceedings (VRP) (Jan. 24, 2002) at 14-15 ("I'm doing what I think is fair and what I think is fair is to walk out of this marriage of four and a half years with essentially what they had, if they can and that can't be done in his case. I mean it just can't be done. So no, I am not trying to punish anybody." (emphasis added)).[3] Gilbert's seeking and obtaining the protection order did not affect the property division; the causal connection between the two is simply lacking. The trial court properly focused on the economic realities of the situation, not the fault of the parties.
¶ 26 Further, the trial court did not abuse its discretion when it divided the pension accumulations during the meretricious relationship. When asked if Gilbert would receive credit for the premarital cohabitation, Judge Cohoe answered,
Sure, I've taken that into consideration. They lived together during that period of time, but if they had never gotten married, there probably  they would have simply gone their separate ways, and there probably wouldn't have been any claim or any of this type of thing.
I don't see that as being a major amount of money that's going to change. Even if I said I treated that one portion, I certainly don't treat it after they separate. But even if I treated that one portion, the change is  it may increase that  I think it goes from 19 to 25, $6,000, half of it is $3,000. It doesn't increase that amount so that I'm going to change my mind about how it should be allocated.
VRP (Jan. 24, 2002) at 12-13. The judge considered the property accumulated during the meretricious relationship and chose to award it as he did; the entire pension went to Muhammad as part of the larger distribution scheme. The conclusions of law also listed this property as "minimal." Clerk's Papers at 19. Based on the record before the court, I cannot say the trial court abused its discretion by reaching this result. It is within the realm of possible divisions; it may not be the one we would have chosen, but that does not render it an abuse of discretion. Gilbert was awarded assets, some debts, and enjoys continuing employment. Muhammad has assets, much debt and no employment. The judge weighed these factors and divided the property, attempting to place the parties in approximately the same position they were in before the marriage. This result is hardly a "manifest abuse of discretion." I would affirm.
¶ 27 I respectfully dissent.
NOTES
[1] There was no finding by the trial court as to the value of Gilbert's Albertson's pension that accrued during the parties' premarriage cohabitation. The trial court found only that the Albertson's pension was worth approximately $10,000, of which approximately $5,000 had accrued during the marriage. CP at 14.
[2] Just exactly how the trial court reached these figures is in no way apparent. If only the period during marriage were considered, Muhammad's and Gilbert's pensions were worth approximately $30,200 and $7,625, respectively. An even division of these sums would have required a payment of approximately $11,287 from Muhammad to Gilbert. Furthermore, as the Court of Appeals accurately noted, "[i]f the period of cohabitation contributions were included, an even split of the pensions, with no other property considerations, would have meant a payment of about $15,250 from Dawud [Muhammad] to Cherry [Gilbert]." Muhammad, 119 Wash.App. at 172, 79 P.3d 483.
[3] We note that the reference to federal law as the source of the firearm prohibition in the court's first finding of fact is incorrect. Rather, it was RCW 9.41.800 and the order of protection itself that prevented Muhammad from owning or possessing firearms.
[4] The trial court stated only that he was awarding "[m]ost of the expensive and nice items of [personal] property" to Gilbert. CP at 14. The Court of Appeals stated that Gilbert failed to provide an adequate record with regard to the value of the personal property, Muhammad, 119 Wash.App. at 171, 79 P.3d 483, but it appears that no such values were assigned.
[5] Gilbert cites In re Marriage of Foran, 67 Wash.App. 242, 258, 834 P.2d 1081 (1992), where the husband's physical abuse of the wife impacted her employability, for the proposition that courts may consider the "economic consequences" of marital misconduct. However, Fornan only addressed the wife's employability with regard to a maintenance allocation and the validity of a prenuptial agreement. Id. The wife's employability was not deemed an asset for purposes of property division. Id.
[1] "A manifest abuse of discretion is present if the court's discretion is exercised on untenable grounds." In re Marriage of Olivares, 69 Wash.App. 324, 328, 848 P.2d 1281 (1993).
[2] The statute reads in full:

In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time.
RCW 26.09.080 (emphases added).
[3] As the Court of Appeals noted, the trial court used "inartful" language that suggests Gilbert is responsible for Muhammad's unemployment. In re Marriage of Muhammad, 119 Wash.App. 166, 174, 79 P.3d 483 (2003). However, the court also noted the lack of "a causal link between the obtaining of the order  the `fault' on the part of Cherry  and the disparate property division as a punishment." Id. This analysis is correct.