**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Filed
Washington State
Court of Appeals
Division Two

November 1, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>NICKY RENEE MISHKO,<br><br>        Appellant,<br><br> and<br><br>JACOB I. KEHR,<br><br>        Respondent. | No. 55976-5-II<br><br><br><br>ORDER GRANTING MOTION<br>TO PUBLISH |

The court's unpublished opinion in this matter was filed on August 23, 2022. On September 12, 2022, appellant filed a motion to publish. Pursuant to RAP12.3(e), the court requested a response. No response was filed. After consideration, it is hereby

**ORDERED** that the motion to publish is granted; it is further

**ORDERED** that the final paragraph of the opinion, which reads as follows, shall be deleted from the opinion and the opinion published: "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered."

**PANEL:** Jj. Glasgow, Cruser, Veljacic

**FOR THE COURT:**

Glasgow, C.J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>NICKY RENEE MISHKO,<br><br>               Appellant,<br><br> and<br><br>JACOB I. KEHR,<br><br>               Respondent. | No. 55976-5-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, C.J.—Nicky Renee Mishko and Jacob I. Kehr were married for two years and had one child, LK, before divorcing in 2015. Several years later, Mishko filed a petition to modify their final parenting plan and for entry of a restraining order against Kehr based on his history of domestic violence. The trial court entered a revised parenting plan granting some of Mishko's requested modifications, but the trial court found that insufficient evidence supported a RCW 26.09.191 finding based on domestic violence, and it did not enter a continuing restraining order.

Mishko appeals the revised parenting plan. She argues that the trial court erred by not imposing RCW 26.09.191 restrictions against Kehr that would limit joint decision-making and by not resolving Mishko's request for a restraining order. We agree. We reverse and remand.

FACTS

Mishko and Kehr married in July 2013 and had one child together, LK, in 2014. Mishko and Kehr divorced in August 2015. The 2015 parenting plan noted a "[h]istory of intimidation and verbal abuse by [Kehr], towards [Mishko] in the presence of [the] child." Ex. 11, at 2. The trial court did not

No. 55976-1-II

impose restrictions at that time "due to separate residences," but it wanted to document the issue "in case of future reoccurrence." *Id.*

In February 2015, Kehr began dating Maya Lewis and the couple had one child together, EK.

In December 2018, Mishko obtained a restraining order against Kehr based on Kehr making harassing telephone calls and text messages, throwing LK's belongings in Mishko's yard, and threatening to cease contact with LK. In 2019, Mishko and Kehr participated in mediation and agreed to a few minor modifications of the parenting plan. They entered into a CR 2A agreement that was filed with the trial court.

Lewis and Kehr separated in June 2020, and Lewis obtained a domestic violence protection order against Kehr. The King County Superior Court entered a temporary parenting plan for Lewis and Kehr with a finding of domestic violence against Kehr.

In September 2020, after learning about the domestic violence case between Lewis and Kehr, Mishko filed a petition to modify the 2015 final parenting plan and 2019 agreed modification. Mishko sought RCW 26.09.191 restrictions against Kehr based on domestic violence, emotional impairment, and abusive use of conflict. She requested that the trial court order a mental health evaluation and require Kehr to follow any recommended treatment. She also sought sole decision-making for LK and requested that the trial court eliminate the dispute resolution requirement in the parenting plan. Mishko also petitioned for a restraining order against Kehr.

At a hearing on the petition, Mishko testified that during her relationship with Kehr, she feared for her and LK's safety. She recalled Kehr making verbal threats as well as being physically violent during their marriage. Mishko testified that Kehr threw full cans of beer at her while she was pregnant, shattered a mirrored closet door by throwing a mason jar into it, broke a door jam, and broke wedding figurines. Mishko testified that one night after LK was born, she was sleeping in LK's room when

3

No. 55976-1-II

Kehr became angry and repeatedly slammed open the bedroom door, startling LK and Mishko and making threats such as "'do you want to end up like the people on the [true crime] shows you watch?'" Verbatim Report of Proceedings (VRP) (Apr. 6, 2021) at 34. After that incident, Mishko and LK moved out of the house and eventually began the dissolution process. During the dissolution process, Mishko sought support services for domestic violence survivors.

Mishko also testified that Kehr acted abusively toward LK during their marriage by shoving things in LK's face in anger and yelling at Mishko in front of LK. Mishko testified that Kehr had never been physically violent to LK but had been verbally abusive including calling LK an "asshole," telling LK not to call him "Dad" anymore, and telling LK he would stop seeing him. *Id.* at 50-51.

Lewis testified at the hearing. She testified that at nearly every visit LK had with Kehr, LK either witnessed Kehr emotionally or verbally abuse her or was abused himself. Lewis testified that Kehr often threw things, threatened to never see LK again, and often lost his temper with her and LK. Lewis also testified that Kehr frequently confessed fantasizing about harming Mishko, for example by pushing her out of a car on the freeway or shooting her. Lewis testified that her five-year relationship with Kehr ended over his domestic violence. She explained that she was concerned about Kehr's ability to safely parent LK:

> His track record of abuse and abusive parenting and an escalation to physical violence. He was . . . not physically abusive of me until I was pregnant with [EK], but he was emotionally abusive before that, and I see his pattern of emotional abuse and rejection of [LK] as consistent with that pattern that escalates to physical violence.

VRP (Apr. 7, 2021) at 155-56.

Kehr testified at the hearing about his experiences in counseling and domestic violence treatment. Kehr expressed regret over the way he had handled things in the past and a resolve to rebuild his relationship with LK.

4

No. 55976-1-II

At the conclusion of the hearing, the trial court entered a revised final parenting plan. The trial court declined to make a finding that Kehr had a history of domestic violence, stating that it "did not find sufficient evidence that [Kehr] has a history of physical violence to warrant a .191 restriction." Suppl. Clerk's Papers (SCP) at 61. In its oral ruling, the trial court noted that many of the physical altercations covered in the testimony were "pretty old history" and that Kehr had taken "substantial steps to get help," but there were recent instances of conflict in communications between the parties. VRP (Apr. 15, 2021) at 333.

In its oral ruling, the trial court discussed its consideration of Lewis's testimony, and acknowledged the evidence presented by Lewis and Mishko including Kehr leaving LK's belongings in the yard, threatening to cut off contact with LK, and exhibiting anger management issues. The trial court also noted its consideration of the various counseling programs Kehr had participated in, including a 12-week parenting program.

The trial court did find that "Kehr uses conflict in a way that may cause serious damage to the psychological development of a child." SCP at 62. The trial court also found:

> [Kehr] has completed a 12 week parenting class and a 38 week domestic violence treatment program. The court finds that the father has taken steps towards addressing his problems that led to his abusive use of conflict and that it is in [LK]'s best interests to spend consistent residential time with his father. The court bases this finding on the letter provided by [LK]'s counselor, which recommended consistent contact between the child and the father, and the testimony from Ms. Mishko, Ms. Lewis and Mr. Kehr. The father is ordered to further pursue mental health treatment, as provided in the parenting plan.

SCP at 77.

The revised parenting plan called for a phased residential schedule, dependent on Kehr's compliance. The trial court limited Kehr's visitation with LK for 180 days and required that he attend mental health counseling, including anger management, and obtain a mental health evaluation. The trial court named Mishko as the primary decision-maker for school and educational decisions and

No. 55976-1-II

provided joint decision-making for health care decisions. Under the phased plan, if Kehr complied with the requirements of phase one and phase two, the parties would return to more extensive visitation. The revised parenting plan did not include a restraining order and waived the dispute resolution requirement.

Mishko appeals.

## ANALYSIS

Mishko argues that the trial court erred by not imposing RCW 26.09.191 restrictions based on domestic violence that limited joint decision-making and by not entering a restraining order against Kehr. In light of the substantial evidence of domestic violence presented at the hearing, we hold that the trial court abused its discretion by not entering .191 restrictions on joint decision-making, by providing for joint decision-making for health care decisions, and by failing to resolve Mishko's request for a restraining order.

### I. JOINT DECISION-MAKING

Trial courts have broad discretion to develop parenting plans. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). We review a trial court's parenting plan for abuse of discretion, which occurs when a decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). The trial court's decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

RCW 26.09.191 governs restrictions and limitations in parenting plans. RCW 26.09.191(1) dictates when the trial court may restrict decision-making in a parenting plan: "The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

other than court action if it is found that a parent has engaged in . . . a history of acts of domestic violence."

Here, substantial evidence showed that Kehr had a history of domestic violence. In 2015, the trial court found that Kehr had a history of intimidation and verbal abuse. In December 2018, the trial court entered a restraining order against Kehr. And at the hearing, both Mishko and Lewis testified at length about multiple incidents of verbal abuse, physical threats, and physical violence. Notably, Lewis testified that Kehr frequently confessed to fantasizing about pushing Mishko out of a moving car on the freeway or shooting her. Additionally, Lewis testified that every time LK was with Kehr, LK either witnessed abuse or was the subject of abuse by Kehr. Considering this evidence, the trial court abused its discretion by failing to make a finding that Kehr had engaged in a history of acts of domestic violence such that .191 restrictions on decision-making were required. Accordingly, we reverse the trial court's modified parenting plan and remand for the trial court to order sole decision-making in all areas, including health care.

## II. RESTRAINING ORDER

Mishko also argues that the trial court erred by declining to impose a continuing restraining order against Kehr. We agree that the trial court failed to address Mishko's request and direct the trial court to do so on remand.

We review a trial court decision whether to enter a restraining order for an abuse of discretion. *In re Marriage of Kowalewski*, 163 Wn.2d 542, 553, 182 P.3d 959 (2008). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (quoting *Littlefield*, 133 Wn.2d at 46-47).

No. 55976-1-II

RCW 26.09.050(1) directs the trial court to make provision only for "any necessary continuing restraining orders." Mishko sought a restraining order prohibiting Kehr from disturbing the peace, entering her home or workplace, and hurting or threatening her or LK. As previously explained, Mishko presented substantial evidence of Kehr's history of domestic violence toward her, including testimony from Lewis that Kehr fantasized about killing Mishko. The record reflects that the trial court entirely failed to consider Mishko's request for a restraining order despite this evidence. The failure to exercise discretion is itself an abuse of discretion. *In re Adoption of A.W.A.*, 198 Wn. App. 918, 922, 397 P.3d 150 (2017). On remand, the trial court must consider Mishko's request for a restraining order in light of the history of Kehr's domestic violence and Lewis's testimony that Kehr fantasized about killing Mishko.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, CJ

We concur:

Cruser, J.

Veljacic, J.

8