IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 87253-2-I |
| ANDREA LEIGH ENGLESON RAVENET, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| LOUIS ALFONSO RAVENET, | |
| Appellant. | |

SMITH, J. — Louis and Andrea Ravenet separated in July 2020 after 25 years of marriage. Following trial, the court entered findings, conclusions, and related orders dissolving the marriage and distributing property. Andrea was awarded the majority of real property, and Louis was given the marital businesses and accounts. Louis appealed the court's distribution of marital assets, its decision to not appoint a special master, and its award of attorney fees to Andrea.

Because the court was not required to appoint a special master, considered all the evidence presented, and made an equitable distribution of the property, we affirm.

## FACTS

### Background

Louis Ravenet and Andrea Engleson Ravenet[1] married in October 1995. During their marriage, they had three children together, all of whom are now adults. Over the course of their marriage, Louis and Andrea founded and operated several companies, as well as managed and renovated real properties. Around July 2020, the parties separated.

At the time of separation, the parties owned three properties: Carbon, Beryllium, and Victoria. Carbon is a 4-unit condominium valued at $1,700,000, with a mortgage balance of $1,400,000. Louis lived in unit one and did not pay rent. The rent generated from the tenants was nearly sufficient to pay the mortgage. Beryllium is a 12-unit residential property. After the parties separated, the property went into foreclosure and Louis listed the property for sale without Andrea's knowledge. The property was listed at $5,250,00 and sold for $4,620,000.[2] A high-interest lender holds the Beryllium Note in the amount of $1,200,000. If all tenants at Beryllium continue to occupy the units and pay rent, the Note will be repaid by 2038. Under the lending agreement, the parties receive approximately $3,400 per month paid into escrow and the remainder of the aggregate rent from the tena[nts is paid toward the Note. The parties' third

---

[1] We refer to the parties by their first names solely for the purpose of clarity and to avoid confusion.

[2] Andrea consented to the sale once she found out the property was on the market.

property, Victoria, is a condominium valued at $525,000, with a mortgage of $259,266.

Carbon and Beryllium are owned by shell companies—Beryllium, LLC and Carbon, LLC, which are held by Vanitas, LLC. Vanitas is a holding company created by Louis and Andrea to manage the family assets, including real estate and other business ventures. Under Vanitas, Andrea and Louis also formed Fresnel, LLC, which has three subsidiary business holdings[3] and was created to develop various energy projects in Latin America, including a major natural gas operation in Peru. The project in Peru started in 2018 and suffered ongoing financial setbacks. At the time of separation, the parties had a 31 percent share in Fresnel.

During the marriage, both Andrea and Louis actively participated in the various businesses. Andrea mainly focused on customer relations and business promotion, while Louis handled business operations, development, and financing. Louis was in control of the finances, but Andrea had unfettered access to the accounts and "took whatever she needed whenever she wanted."

Several times during their marriage, Louis deactivated Andrea's credit cards subsequent to an argument between the two. He also transferred money from their joint account to a personal account. After separation, Louis continued to prevent Andrea from accessing marital assets by removing her from many of their business and personal bank accounts. Louis also redirected tenant rent

---

[3] Okra, LLC; Okra Energy Alabama, LLC; and Pure LNG, S.A.C.

payments from Beryllium and Carbon to his personal accounts and stopped paying the mortgage on Beryllium, leading to its foreclosure.

In May 2023, Andrea became aware that the Victoria property was set for auction due to foreclosure. Because Andrea had no access to the couple's personal bank accounts, she withdrew $100,000 from the Fresnel business account, upon which she was a cosigner, to pay off the unpaid taxes. When Andrea tried to pay the taxes, she found out the bank had proactively paid the debt and rolled it into the HELOC. Andrea then used the funds withdrawn to pay for attorney fees, family emergencies, and living expenses for herself and her daughter, who was a minor at the time. Louis initiated a contempt proceeding, alleging Andrea had no authority to remove funds from the Fresnel account. Louis maintained the funds were controlled by outside investors and the investors were threatening to sue and withdraw further investments. The court denied the motion, stating Louis failed to provide any evidence about the ownership structure of Fresnel, and he had not met his burden of showing that the funds were anything other than community funds in a community account. The court also noted that Louis had transferred large sums directly from the Fresnel account to his personal account, and provided "20 pages of outgoing wire transfers from unidentifiable bank accounts."

Procedural History

In December 2022, Andrea petitioned for dissolution. After several attempts to serve Louis, to no avail, Andrea moved to serve Louis by

4

publication.[4]  The court granted the motion.

In September 2023, Andrea served Louis with her first set of interrogatories and requests for production.  Louis did not produce discovery materials before the deadline.  Trial was originally scheduled for November 2023, but at a pretrial conference in early November, Andrea asked for a short continuance of four to six weeks to obtain the outstanding discovery.  Louis requested a longer continuance, asserting he needed additional time to conduct an audit of the couple's assets.  Andrea stated she was not interested in having an accounting firm appointed because she believed it would only delay trial further.  The court informed Louis that if a dispute existed as to whether an auditor was necessary, he would need to move to compel.  The court continued the trial to January 2024.

In December, Louis had not produced discovery, and Andrea moved to compel discovery.  The court granted the motion.  At a pretrial conference in early January 2024, Andrea noted that Louis still had not produced discovery.  Louis pointed to "serious medical issues" for his inability to produce discovery and requested another continuance.  The court granted a continuance and reminded Louis what was required of discovery, specifically that he was required to produce original documents in English.[5]

---

[4]  Louis travelled frequently for work and Andrea had no way to determine his location at any given time.  Andrea e-mailed Louis at three different addresses and attempted to personally serve him three times.

[5]  Prior to this point, Louis had produced summaries of bank statements, instead of the originals, and offered documents in Spanish.

In February 2024, Louis requested another continuance because of "a medical condition and impending surgical procedure." Andrea reluctantly agreed and the court continued the trial to May 2024. The parties stipulated to another continuance in April 2024, and the trial was set for August 2024.

Trial commenced in August 2024. Both parties proceeded pro se. At the start of trial, Louis requested another continuance due to illness. The court noted it had not been apprised of any medical conditions before that day and, without medical documentation, the trial would go forward as scheduled. The court explained that it did not find the circumstances extraordinary enough to warrant a continuance because Louis demonstrated "a pattern of this type of delay."

While addressing preliminary matters, the court expressed frustration that Louis had not produced his trial brief until that morning at 9:00 a.m. The court inquired whether Louis had provided his trial brief to Andrea, and Louis said he had sent it to the bailiff, but had not copied Andrea. The court reminded Louis that ex parte contact with the court is "inexcusable," and found Louis's behavior amounted to intransigence.[6]

Much of the testimony at trial centered on the valuation of Fresnel. Despite multiple requests, Louis failed to provide the court or Andrea with credible financial information related to Fresnel. Based on outdated corporate reports and 2019 earnings statements, Andrea estimated Fresnel was worth

---

[6] The court later noted that it was not "making any claims of intransigence" before it heard all the evidence.

approximately $75 million.[7]  Louis contended that Fresnel and its subsidiary businesses were only worth $150,000, but also testified the equipment in Peru was worth approximately $8 million.  The court found neither of those valuations credible and estimated Fresnel's value to be closer to $8,324,093—the value at the time of separation.[8]

The parties also disputed the extent of Andrea's access to and knowledge of the couple's various bank accounts.  The court stated numerous times it was having a hard time following Louis's cross-examination and testimony because of the bickering between him and Andrea and Louis's muddled questioning.  During his direct examination, Louis testified that he removed Andrea from the various business accounts because she withdrew funds without notifying him beforehand.  Louis maintained he never took funds from the joint accounts and redirected them for his personal benefit, and any withdrawal of money was to "keep everything moving forward."  But Louis did not deny he had been leveraging family business accounts to pay for travel, lodging, and other expenses.  Louis maintained any spending made from the Vanitas/Fresnel assets during the four years after separation was to "promote the energy company."

---

[7]  Louis also stated that, if the business was fully operational, it could be worth as much as $75 million.

[8]  The court recognized the likelihood that the value was less, considering a 2023 tax filing noting a loss of $4,209,000.

Findings and Conclusions

The court did not find Louis's testimony credible.  In its findings and conclusions, the court noted that, "[e]ven viewing the husband's best intentions charitably, the husband has nonetheless diverted considerable family assets (which could not be fully traced) to his own plans, post-separation."  The court also stated that Louis failed to comply with discovery requests and refused to disclose bank accounts, tax information, and information about earnings.  The court opined that, as a result of Louis's failure to provide accurate accounting, the court "lacked a full complement of financial data that informed the value of Fresnel, the question of the husband's post-separation earnings and (mis)use of community assets, and any basis to determine the current value of various personal and business accounts the wife's access to which was excluded."

Additionally, the court did not find Louis's assertion that Andrea "raided" community assets credible.  The court noted that Louis mainly pointed to the $100,000 Andrea withdrew, but that withdrawal was "a wash considering the husband's steady use of community assets post-separation to sustain himself."[9]

Because of Louis's discovery violations and failure to trace expenditures, the court drew an adverse inference against Louis and concluded he "spent considerable community assets, even if some of those assets may have been dedicated to salvaging the parties' business interests."  Accordingly, the court awarded all community financial accounts to Louis, including all community credit

---

[9] The court pointed to Louis's withdrawal of $388,000 from the community Fresnel account by the time he moved for contempt.

card debt. The court also awarded to Louis any loans against the marital community and debt associated with these loans.

Included in the award of financial accounts to Louis was Fresnel and all the subsidiary business interests therein. The court again drew an adverse inference against Louis, noting his estimates of the businesses were not credible and his refusal to produce transparent documentation made an accurate accounting of the interests impossible. The court noted that Andrea "rightfully does not want to be involved in the operation of these businesses that [Louis] has controlled during the marriage (for better or worse) or be subject to business contingencies that [Louis] has created." The court concluded that, despite Louis's estimates, the business maintained considerable value.

The court awarded Andrea the Victoria property and the HELOC associated with it. It also awarded Andrea the Carbon condominiums, excluding unit one, which the court gave to Louis for his residence. The court tasked Andrea with arranging any financing associated with the Carbon units, but determined the cost should be split fifty-fifty. The court also split the payment of the Parent Plus student loans for the adult children's post-secondary education fifty-fifty between Louis and Andrea. Finally, the court awarded Andrea $64,000 in attorney fees, noting Louis's "intransigence permeated the litigation and the parties' financial arrangements before the litigation."

Louis appeals.

ANALYSIS

Property Distribution

Louis claims the trial court abused its discretion and made an inequitable distribution of assets when it awarded him essentially all the couple's debts, divided the property as punishment for Louis's failure to make an accurate accounting, and failed to appoint a special master. We conclude the trial court did not abuse its discretion when it divided the marital assets and declined to appoint a special master.

We review a trial court's distribution of property in a dissolution proceeding for abuse of discretion. *In re Marriage of Groves*, 10 Wn. App. 2d 249, 254, 477 P.3d 643 (2019). A court abuses its discretion when its " 'decision is manifestly unreasonable or based upon untenable grounds or reasons.' " *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004) (quoting *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997))*.* A court that rests its decision on facts unsupported in the record or reaches its decision by applying the wrong legal standard abuses its discretion. *Hundtofte v. Encarnacion*, 181 Wn.2d 1, 7, 330 P.3d 168 (2014).

The trial court's findings of fact are reviewed for substantial evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). " 'Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact *could find the fact more likely than not to be true.*' " *In re Dependency of A.C.*, 1 Wn.3d 186, 193, 525

10

P.3d 177 (2023) (quoting *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013)).  We will not disturb a trial court's findings of fact on appeal as long as they are supported by substantial evidence.  *Rockwell*, 141 Wn. App. at 242.  "Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact, and if so, whether the findings in turn support the trial court's conclusions of law."  *Rockwell*, 141 Wn. App. at 242.  Unchallenged findings of fact are verities on appeal.  *In re Domestic Violence Protection Order of Timaeus*, 34 Wn. App. 2d 670, 677, 574 P.3d 127 (2025).

Under RCW 26.09.080, the trial court shall make a just and equitable distribution of marital property in a dissolution proceeding.  "A fair and equitable division by a trial court 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties.' " *In re Marriage of Zahm*, 138 Wn.2d 213, 218-19, 978 P.2d 498 (1999) (quoting *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)).  In determining an equitable property distribution, the court must consider all relevant factors, including the nature and extent of the community property, the nature and extent of the separate property, the duration of the marriage, and the economic circumstances of the parties at the time of the property division.  RCW 26.09.080.

The statutory factors are not limiting; the court may consider additional factors, such as the parties' " 'foreseeable future acquisitions and obligations, and whether the property to be divided should be attributed to the inheritance or efforts of one or both of the spouses.' " *In re Marriage of Urbana,* 147 Wn. App. 1, 11, 195 P.3d 959 (2008) (quoting *In re Marriage of Olivares*, 69 Wn. App. 324, 329, 848 P.2d 1281 (1992)). The trial court is in the best position to evaluate the assets and liabilities of parties, and we will not disturb a trial court's order distributing property absent an abuse of discretion. *In re Marriage of Wallace*, 111 Wn. App. 697, 707, 45 P.3d 1131 (2002).

1. Allocation of Assets

First, Louis contends the trial court failed to consider the economic circumstances of the spouses and impermissibly awarded Louis the majority of the debt and Andrea all the income-producing property. Louis maintains the court erred when it assigned him the entirety of the parties' credit card debit expressly because he had "been living off community assets" during the separation period. Louis claims the court ignored the fact that Andrea was also living off community credit cards and she had withdrawn $100,000 from the Fresnel account, which, "in large part," caused Fresnel's holdings to be overwhelmed by debt. Louis also alleges the court's decision to award him the majority of the debt was punishment for his "supposed failure to make an accurate accounting."

It is the duty of the party in control of an asset belonging to the community to "make a full and fair disclosure" of that asset's value. *Rentel v. Rentel*, 39 Wn.2d 729, 736, 238 P.2d 389 (1951). When a party conceals assets or withholds pertinent financial information, of which they are in control, the court may draw an unfavorable inference concerning the missing information. *See, e.g.*, *Henderson v. Tyrrell*, 80 Wn. App. 592, 606, 910 P.2d 522 (1996); *Rentel*, 39 Wn.2d at 736.

Here, the court considered both Louis's and Andrea's spending from the time of separation. The court noted in its order that all debt incurred by Andrea since the date of separation must be paid by her, and likewise for Louis. But other than the $100,000 taken from the Fresnel account, the majority of Andrea's debt was amassed on her separate credit cards, given she no longer had access to most of the joint accounts. Concerning the $100,000, the court did not find Louis's testimony credible that the withdrawal of that amount was significant in the overall functioning of Fresnel.[10] Additionally, Andrea was allocated all of the debt associated with the properties awarded to her, including the $259,267 HELOC secured by the Victoria and the $1,400,000 mortgage secured by the Carbon. Andrea was also allocated one-half of the Parent Plus Student Loan.

While the court awarded Louis all the debt associated with the community accounts, this was because Louis made it "impossible to determine the full amount [he] spent on himself because [he] withheld documentation that might

---

[10] The court also noted that Louis withdrew $388,000 from the same account.

elucidate the financial situation and did not cleanly trace what he spent for the business and what he spent to sustain his life style." Louis improperly blocked Andrea's access to the accounts, did not answer her discovery requests in full, and failed to produce a complete set of bank records consistent with Local Family Law Rule (LFLR) 10. Accordingly, the court did not err when it drew an adverse inference against Louis and awarded all debt associated with the community accounts to Louis.[11]

Louis also alleges the trial court failed to properly assess the value of Fresnel, and it was inequitable for the court to award him the entirety of the business. In determining the value of Fresnel, the court noted it did not find either Andrea's valuation of $75,000,000 or Louis's valuation of $150,000 credible based on the information it had, including a 2019 earnings report and 2023 tax filing. The court noted that Louis had selectively produced documents that supported his self-serving claim that Fresnel was only worth $150,000. Because of Louis's failure to produce accurate financial information for Fresnel, the court had very little documentation to consider when determining how Fresnel should be divided. Accordingly, the court determined the most equitable way to assess Fresnel's value was to consider the value at the time of separation, which was $8,324,093.[12] The court acknowledged the business's value was likely less

---

[11] Because the court lacked data concerning the current value of the parties' accounts, the court assigned a value at the time of separation.

[12] The trial court has broad discretion to determine an evaluation date that is equitable—whether it be the date of separation, date of trial, or somewhere in between. *Koher v. Morgan*, 93 Wn. App. 398, 404, 968 P.2d 920 (1998).

14

at the time of trial, but also noted that Louis had testified the business, fully functioning, would be worth $75 million, and the equipment itself was worth approximately $8 million.

In addition to recognizing the full earning potential of the business, the court also concluded it would be unjust to saddle Andrea with an interest in a business that she has not been involved in the operation of, or to subject her to business contingencies that Louis has created. As the court noted, Louis had made "an accurate accounting of the overlapping domestic and overseas energy projects and business interests impossible," and the most equitable division was to award all of Fresnel's business interests to Louis, who had been running the company for the duration of the marriage and since separation. The court reviewed all available documentation, considered the position of both parties, and determined it was equitable and just to award Louis the entirety of the business. This was not an abuse of the court's discretion.

2. <u>Division as Punishment</u>

Louis also claims the court abused its discretion because it awarded him the community debt as punishment for his failure to make an accurate accounting of the community assets and in response to Andrea's claims of abuse.

a. *Misconduct*

RCW 26.09.080 requires a court to make an equitable disposition of marital property "without regard to misconduct." Marital misconduct under RCW 26.09.080 "refers to immoral or physically abusive conduct within the

marital relationship and does not encompass gross fiscal improvidence, the squandering of marital assets or . . . the deliberate and unnecessary incurring of tax liabilities." *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991). When determining property distribution, the court may consider the actions of a party when such activities result in the dissipation of marital property. *In re Marriage of Clark*, 13 Wn. App. 805, 808, 538 P.2d 145 (1975).

Louis cites to several cases to support his contention that the trial court abused its discretion, including *In re Marriage of Muhammad*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005), and *In re Marriage of Peppin*, noted at 152 Wash. App. 1053, slip op. at 2 (2009), but these cases are distinguishable and do not support Louis's claims. In *Muhammad*, the court concluded that the trial court improperly considered the wife's decision to file a protection order against the husband when it determined property distribution. 153 Wn.2d at 806. But, while the court concluded that considering marital misconduct was improper, it explicitly noted that "negatively productive conduct that causes the dissipation of marital assets can be considered" when determining the just and equitable distribution of marital property. *Id.* at 804 (emphasis omitted).

Louis also cites to *Peppin* to support his claim, but this case is not inapposite to the trial court's ruling here. In *Peppin*, the court concluded that it was not error for the trial court to consider the party's misrepresentation of assets, noting "misconduct that causes the dissipation of marital assets can be considered." Slip op at 3. Here too, the court did not err when it considered

16

Louis's failure to produce a reliable accounting of the assets, his violation of discovery orders, and failure to comply with LFLR 10 as factors when determining property distribution. As the court noted, Louis's actions made it impossible for the court to assess the various assets of the marital community.

b. *Abuse*

Louis also claims the trial court "may have improperly considered fault" based on Andrea's statements that Louis was abusive in the relationship.

A court may not consider marital misconduct when distributing marital property. *Urbana*, 147 Wn. App. at 11. "Coercive control" is defined under RCW 7.105.010(4) as "a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty." Coercive control can include "[c]ontrolling, exerting undue influence over, interfering with, regulating, or monitoring" a spouse's finances and economic resources. RCW 7.105.010(4).

Here, Louis contends the court relied on Andrea's testimony that Louis was physically, verbally, and financially abusive when it determined property distribution. But nowhere in the record does Andrea claim physical or verbal abuse. Andrea does maintain Louis was financially abusive, but Louis presents no evidence that the court considered abuse of any kind when making its determination. In fact, Louis does not point to a single instance of the court mentioning financial abuse.

17

Because the court did not improperly consider marital misconduct when determining property distribution, we find no error.

Forensic Accountant

Louis contends the trial court abused its discretion when it did not appoint a forensic accountant as special master. Andrea maintains the law does not require the court to appoint a special master and, accordingly, the court did not err by not ordering the appointment of a forensic accountant. We agree with Andrea that the court was not required to appoint a special master.

Under CR 53.3, the court may appoint a special master to "provide independent assistance to the court in resolving complex discovery issues." *State v. Johnson & Johnson*, 27 Wn. App. 2d 646, 649, 536 P.3d 204 (2023). The court may make such an appointment upon its own motion or upon the request of a party. CR 53.3.

Here, Louis contends the court abused its discretion when it did not order a special master because the parties' holdings and debts were complex and the court admitted it did not have a full understanding of the assets. Louis alleges he asked the court for an accounting at the beginning of litigation, but the trial court "refused to listen to him or agree to such an accounting."

First, Louis ignores the reason the court stated it did not have a full understanding of the assets: Louis refused to answer Andrea's discovery requests in full and did not produce a complete set of bank records and tax returns in compliance with LFLR 10. Additionally, the court never denied Louis's

request for a valuation of the community assets. In fact, the court granted a two-month continuance in order for Louis to seek an audit. The court asked the parties to "cooperate with respect to these auditing firms" and told the parties the court would help if there was any dispute. When Andrea expressed disinterest in conducting an audit, the court told Louis that he would need to ask the court for an appointment of an auditor if Andrea did not agree. The court clarified that Louis would "have to file a motion in order to compel such a thing," and the burden was on Louis because he was requesting it. Louis never moved for appointment of a special master to conduct a financial audit.

The court made it clear to Louis that it was his responsibility to move for a special master, and he never did so. The court did not abuse its discretion by not making an appointment upon its own motion.

### Attorney Fees

Louis claims the trial court abused its discretion when it awarded Andrea attorney fees based on his intransigence. Andrea contends the trial court was well within its discretion to award her attorney fees based on Louis's behavior before and during trial. We agree with Andrea.

A trial court's award of attorney fees based on intransigence is reviewed for abuse of discretion. *Wixom v. Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). The court abuses its discretion when its decision "is outside the range of acceptable choices or based on untenable grounds or untenable reasons." *Wixom*, 190 Wn. App. at 725.

Under RCW 26.09.140, the court may order a party to pay reasonable attorney fees and expenses for the cost to the other party of maintaining or defending the proceeding. Typically, when ordering attorney fees, the court balances the " 'needs of the spouse requesting them with the ability of the other spouse to pay.' " *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989) (quoting *Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984)). However, "[i]t is well settled that '[a] trial court may consider whether additional legal fees were caused by one party's intransigence and award attorney fees on that basis.' " *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006) (alteration in original). " 'When intransigence is established, the financial resources of the spouse seeking the award are irrelevant.' " *Bobbitt*, 135 Wn. App. at 30 (quoting *Morrow*, 53 Wn. App. at 590). Examples of intransigence include, "foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions." *Bobbitt*, 135 Wn. App. at 30.

Here, Louis mainly focuses on Andrea's claim that he evaded service as the reason the court awarded attorney fees based on intransigence. But, the court did not mention evading service as a basis for its award of attorney fees to Andrea. Instead, the court noted that Louis (1) refused to cooperate with Andrea during discovery, (2) filed an unsuccessful motion for contempt to block Andrea from assets that he routinely accessed for personal use, and (3) failed to comply with discovery orders and LFLR 10 requirements. The court concluded that

Louis's behavior hindered Andrea's ability to prepare for trial and the court's ability to assess the marital assets.

The court's award of fees to Andrea is supported by the record; therefore, it was not an abuse of discretion.

We affirm.

_____
Smith, J.

WE CONCUR:

_____        _____
Feldman, J.                            Fearing, J.