[No. 1113-3. Division Three. July 1, 1975.]

*In the Matter of the Marriage of* ALICE B. CLARK, *Respondent, and* HAL A. CLARK, *Appellant.*

*Harvey Faurholt* (of *Horton, Wilkins & Faurholt*), for appellant.

*Michael Johnston* (of *Campbell & Johnston*), for respondent.

McINTURFF, C.J.—Mr. Clark appeals from a decree of dissolution.

The parties have been married for 39 years and have had two children who are now of lawful age. The decree of dissolution was entered in February 1974. The trial court divided the tangible community property awarding approximately $31,500 to Mr. Clark and $33,400 to Mrs. Clark. In addition, each party was awarded his or her interest in their respective social security benefits and state teacher's retirement fund.

Mrs. Clark taught school for 27 years, retiring in June 1973, at the age of 63. Prior to February 1967 Mr. Clark held various jobs and subsequently has worked at Columbia Basin Community College. At the time of the trial he was receiving a salary in excess of $12,000.[1] For the past 15 years of their marriage the parties maintained separate checking accounts, each depositing his or her earnings in

---

[1] Although Mr. Clark anticipated that he would retire at the age of 65 at the end of the 1974 school year, during oral argument, counsel stated that he was still employed by Columbia Basin Community College.

their respective accounts. Mrs. Clark paid the majority of the household bills and expenses, at least two-thirds of the house payments and all of the insurance premiums. Except for one-third of the house payments and the Hamilton Fund (mutual funds) accounts that Mr. Clark received as his separate property in the decree, the court found that he made no substantial community contributions. Mrs. Clark received $504.65 per month from her state teacher's retirement program[2] and monthly social security payments of $236. After retiring Mr. Clark will receive from the state teacher's retirement fund $172 per month[3] and social security payments of $250 to $275 per month.

In 1958 the parties sold their radio station for a profit of $40,000. Although the proceeds of the sale of the station were controlled by Mr. Clark, the court found that he could not account for at least $10,000 of these proceeds. The court further found that since 1959 Mr. Clark had dissipated much of his earnings on expenditures of his own choosing, mainly alcoholic beverages.

The central issue is whether the court erred in considering the testimony regarding Mr. Clark's drinking habit which resulted in a dissipation of community assets.

Mr. Clark contends that evidence of his drinking habit was considered contrary to RCW 26.09.080[4] which precludes consideration of marital misconduct, that he was punished economically because the trial court awarded Mrs. Clark twice as much of the dollar value of the community assets as it awarded to Mr. Clark, and that his marital misconduct rather than the economic condition of the parties at the

---

[2] An expert testified that Mrs. Clark had a remaining life expectancy of 15.44 years.

[3] An expert testified that Mr. Clark had a remaining life expectancy of 13.51 years.

[4] RCW 26.09.080 provides, in part: "In a proceeding for dissolution of the marriage, . . . the court shall, *without regard to marital misconduct*, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable . . . (Italics ours.)

time of the dissolution was the paramount concern of the court in its division of the property.[5]

Mrs. Clark responds by stating that the trial court's distribution of property should not be overturned in the absence of its manifest abuse of discretion;[6] and that evidence of Mr. Clark's drinking was not admitted to show marital misconduct or "fault," but to show the effect his drinking and consequent expenditure of funds had on the community assets. We agree.

■ RCW 26.09.080 requires the court to consider all relevant factors in arriving at a "just and equitable" distribution of property without regard to "marital misconduct." The "underlying purpose of the new Dissolution of Marriage Act is to replace the concept of 'fault' and substitute marriage failure or 'irretrievable breakdown' as the basis for a decree dissolving a marriage.'"[7] However, the fact that "fault" is no longer a relevant query does not preclude consideration of all factors relevant to the attainment of a just and equitable distribution of marital property. The dissipation of marital property is as relevant to its disposition in a dissolution proceeding as would be the services of a spouse tending to increase as opposed to decrease those same assets.[8] It is apparent from the record that the testimony relating to Mr. Clark's profligate life style was admitted and considered by the court not for the purpose of

---

[5]*DeRuwe v. DeRuwe*, 72 Wn.2d 404, 408, 433 P.2d 209 (1967).

[6]*Akins v. Akins*, 51 Wn.2d 887, 322 P.2d 872 (1958).

[7]Holman, *A Law in the Spirit of Conciliation and Understanding: Washington's Marriage Dissolution Act*, 9 Gonzaga L. Rev. 39 (1973). Prior to the enactment of RCW 26.09.080, the matter of "fault" was properly considered in making a disposition of property in a divorce action. *Bryant v. Bryant*, 68 Wn.2d 97, 411 P.2d 428 (1966).

[8]*Cf. Pollock v. Pollock*, 7 Wn. App. 394, 409, 499 P.2d 231 (1972). Our conclusion is buttressed by drawing from an analogous concept in the field of evidence. The hearsay rule does not prevent a witness from testifying that he heard an out-of-court statement made, but it does preclude that testimony if it is admitted for proving the truth of an extra-judicial statement. *Dutton v. Evans*, 400 U.S. 74, 88, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *Moen v. Chestnut*, 9 Wn.2d 93, 108, 113 P.2d 1030 (1941).

establishing "fault," but for the purpose of determining whose labor or negatively productive conduct was responsible for creating or dissipating certain marital assets.[9] This was not error.[10]

The next question is whether the division of property constituted a manifest abuse of discretion.

Mr. Clark contends that the result of the court awarding each party his or her state teacher's retirement fund was to award $114,935 of community property to Mrs. Clark and $55,180 to himself. These figures were reached as the result of testimony by a manager of California Western States Life Insurance Co. The expert testified that based on Mrs. Clark's age of 65 years, that on a straight life annuity basis it would take an outlay of $81,535.53 to produce a gross income of $522 per month (the amount of Mrs. Clark's pension). He further testified that for a male 64 years of age to produce a gross income of $172 per month (the amount of Mr. Clark's pension) for the rest of his life the same annuity would cost $24,378.30. The totals projected by Mr. Clark exclude the social security to be received by each party but do include the value of the community property awarded to each party. Mr. Clark argues that the trial court must make a determination of the value of the pension plans and that a proper basis to arrive at a valuation would be the comparison of the cost of a similar private plan to the one funded by the Washington teacher's retirement system. He emphasizes that his expert's testimony regarding the value of these plans was uncontradicted at the trial.

Mrs. Clark responds that the expert did not know how

[9]Although Justice Holmes in *United States v. Robbins*, 269 U.S. 315, 327, 70 L. Ed. 285, 46 S. Ct. 148 (1926), expounded the doctrine that the husband "may spend [community income] substantially as he chooses, and if he wastes it in debauchery the wife has no redress," in the present day we find that common sense as well as RCW 26.09.080 prevents application of this attitude. Contrary to Holmes' viewpoint, excessive waste of marital property has historically given rise to remedial rights for the *femme covert*. W. DeFuniak & M. Vaughn, *Principals of Community Property* § 120, at 295-96 (2d ed. 1971).

[10]*Cf. Roach v. Roach*, 72 Wn.2d 144, 148, 432 P.2d 579 (1967).

the Washington teacher's retirement system was funded,[11] that the value of the wife's pension on the date of her death is zero dollars, and that there must be some profit in a private annuity plan. Thus, the two systems cannot appropriately be compared. It is further emphasized that the division of property did not constitute a manifest abuse of discretion because it was proper to consider asset contribution as well as asset dissipation, and that the court did not have to accept Mr. Clark's valuation placed on the retirement fund.

██ In this instance RCW 26.09.080[12] requires that the division of property be just and equitable after considering, but not limited to, the relevant statutory factors. Evidence of the amount of money it would take to purchase an annuity for a given income per month on the open market may be admissible, but the court is not bound by it. It is sufficient if the court determines the periodic amount of money the recipient will receive upon retirement on a monthly basis. The key to an equitable distribution of property is not mathematical preciseness, but fairness. This is attained by considering all of the circumstances of the marriage, past and present, with an eye to the future needs of the persons involved. Fairness is decided by the exercise of wise and sound discretion not by set or inflexible rules.[13]

---

[11]The funding of an annuity through a private company is funded 100 percent by the annuitant according to the expert's testimony. Mrs. Clark contributed approximately $12,000 to her state teacher's retirement fund. The remainder is funded by legislative appropriation.

[12]RCW 26.09.080 provides, in part:

"In a proceeding for dissolution of the marriage, . . . the court said, . . . after considering all relevant factors including, but not limited to:

"(1) The nature and extent of the community property;

"(2) The nature and extent of the separate property;

"(3) The duration of the marriage; and

"(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children."

[13]*Wilder v. Wilder*, 85 Wn.2d 364, 534 P.2d 1355 (1975); *Rogstad v. Rogstad*, 74 Wn.2d 736, 737, 446 P.2d 340 (1968).

In *DeRevere v. DeRevere*, 5 Wn. App. 741, 746, 491 P.2d 249 (1971), the court noted that one way to award a pension was award it to the party whose efforts earned the right to the pension.[14] In *DeRevere*, Mr. DeRevere was awarded his entire pension and Mrs. DeRevere was awarded a sum of money in lieu of her community interest in the retirement plan. The court found no manifest abuse of discretion and stated at pages 746-47:

> We need not attempt to develop precise valuations as to the theoretical interest of each of the parties to this retirement plan. It is a simple matter to conjure up hypothetical situations which may or may not develop, any one of which would result in a gross injustice to either party when this method of distributing an inchoate interest in any given pension plan is utilized.

In the case before us several factors may have been considered by the court in making its disposition of property: (1) Mr. Clark dissipated much of his earnings since 1959 and was unable to account for $10,000 from the sale of the radio station which was community property; (2) Mr. Clark was employed at the time at Columbia Basin Community College earning in excess of $12,000 per year; (3) Mrs. Clark spent her earnings on family living expenses and savings; (4) each party was awarded the right to the teacher's retirement fund created by his or her own efforts; and (5) requiring the allocation of community property based upon a hypothetical value of the pensions might well result in a gross injustice to Mrs. Clark. We find that no manifest abuse of discretion occurred.

Based upon the record we find that the remaining findings of fact to which error was assigned are supported by substantial evidence.

■ Mr. Clark finally contends that the findings of fact and conclusions of law and decree of dissolution were not

---

[14] An analogous attitude was expressed in *Carstens v. Carstens*, 10 Wn. App. 964, 968, 521 P.2d 241 (1974). The respondent's alcoholic condition and the resulting depletion of his estate was the basis for the court's decision in refusing to modify the alimony provisions of a decree of divorce because the "changes were self imposed."

812

in proper form. No authorities are cited in support of this proposition; we therefore assume that counsel after diligent search has found none. Since the alleged error does not appear on its face to be well taken, we need not consider it.[15]

Judgment of the superior court is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied August 12, 1975.

Review denied by Supreme Court October 21, 1975.

---

[15]*DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962).