79 P.3d 483 (2003)
119 Wash.App. 166
In re the MARRIAGE OF Dawud A. MUHAMMAD, Respondent, and
Cherry Muhammad, Appellant.
No. 28776-5-II.
Court of Appeals of Washington, Division 2.
November 18, 2003.
Jason P Benjamin, Law Offices of Benjamin & Healy PLLC, Lakewood, WA, for appellant.
Leslie Orville Stomsvik, Attorney at Law, Tacoma, WA, for respondent.
*484 Patricia E. Kahn, Green & Yalowitz, Seattle, WA, for Amicus Curiae on behalf of Northwest Women's Law Center.
BRIDGEWATER, J.
Cherry Muhammad appeals from the property division in her marriage dissolution from Dawud A. Muhammad. She finds error in the trial court's grant of more retirement benefits to Dawud, and in the trial court's consideration of the protective order she sought against Dawud, which caused him to lose his job as a police officer. We hold that although the trial court's remarks may have been inartful in discussing Cherry's knowledge of the consequences of bringing a domestic violence protection action against her husband, the property division was not an abuse of discretion an abuse of discretion and the consequences of the protection order were relevant to the parties' economic situation at the time of the dissolution. Finding neither fault nor punishment were evident in the trial court's property division, we affirm.
Cherry and Dawud Muhammad began residing together in a cohabitational relationship in December 1994, married in August 1996, and separated in April 2001. Cherry's initial petition for a permanent domestic violence protection order was dismissed and consolidated into the underlying dissolution action. After a four-day trial, the temporary order was converted into a permanent order. That permanent order precluded Dawud from being able to own or possess a firearm and resulted in Dawud's termination from his employment as a sheriff for King County.
The trial court made the following statements before announcing the property division:
In one sense I do think that Mrs. Muhammad has sought to punish Mr. Muhammad and that's not to say that he didn't bring a considerable amount of this on himself by at least some level of his own activities. But it's been my experience that, you know, there is almost always two sides to these stories, and I didn't hear the whole other story that was presented to [the judge that granted the permanent protection order] and frankly, I'm thankful that I didn't have to hear it.
But you can look at some of the facts here and that gives you a flavor of maybe what ought to happen, I think. When the parties were married, Mr. Muhammad had a house, had some minimal household goods; he had a car presumably and he had a career and some pension benefits and of course, some debts.
Mrs. Muhammad has had minimal household goods, as she described them, a car presumably, a job and pension benefits and some debts.
Now, Mr. Muhammad has some fairly substantial debts, a car and some pension benefits, but he doesn't have a house and he doesn't have a career. Mrs. Muhammad pretty much has what she came in with but apparently some newer and extensive household goods and additional or considerably more in debt.
I think what's probably most troubling here in regard to how you try to resolve the rather minimal property issues that we have is the protection order problem. She had to know or at least should have been told that if she proceeded with this protection order, that he was not going to have a job and he wasn't going to have an income and he wasn't going to be able to pay his debts, let alone the mortgage payments.

Now, from her side of the fence obviously that's a catch 22 because she felt she needed the protection order, and if she felt she really needed the protection order, then she had to proceed with that. But then I think if that's the situation, she has to recognize the consequences and you can't just ignore the fact that there are consequences. Those consequences have been taken into consideration in terms of trying to make the distribution somewhat equitable.

So, I'm going to basically make the following award....
Report of Proceedings (RP) (Jan. 24, 2002) at 2-4 (emphasis added). Thus, the trial court plainly focused on the economic circumstances that the parties presented at the time of the dissolution. The court later engaged in a short colloquy with Cherry's trial counsel about how it considered the protective order:

*485 THE COURT: ... I just don't see that if she's going to put him out of a job, what does she expect him to pay and what does she expect him to do? I don't see that happening. It's [the mortgage is] not going to get paid. And I'm not saying she did it deliberately.
[Wife's counsel]: Really we would say that he put himself out of a job when he threatened the sister with the gun.
THE COURT: That's why I say it's a catch 22.
[Wife's Counsel]: We get the feeling she is getting punished by the Court for getting the protection order.
THE COURT: I'm doing what I think is fair and what I think is fair is to walk out of this marriage of four and a half years with essentially what they had, if they can and that can't be done in this case. I mean it just can't be done. So no, I am not trying to punish anybody.

RP (Jan. 24, 2002) at 14-15 (emphasis added).
Lastly, the court made the following findings:
By the Respondent obtaining a permanent domestic violence protection order against the Petitioner, Dawud A. Muhammad, said Petitioner no longer has the ability under Federal Law to own or use a weapon.
The ability to own and use a weapon is a condition of his employment through the King County Sheriff's Office or any other law enforcement agency.
As a result of the Petitioner's being unable to own or use a weapon, the Petitioner has been terminated from his employment with the King County Sheriff's Office and is not eligible for any law enforcement position at this time.
The only work for which the Petitioner is qualified at this time is as a law enforcement officer and he is currently unemployed.
The Respondent knew, and has known for some considerable period of time, that by seeking and making the protection order permanent she would effectively terminate her husband's ability to work.
By virtue of the obtaining of the permanent domestic violence protection order the Petitioner's ability to obtain gainful employment or meaningful retirement benefits in the future is severely limited due to his education and training.
Clerk's Papers (CP) at 17 (emphasis added).

I. No manifest abuse of discretion.
In a marriage dissolution property division, the trial court distributes property in a manner that is "just and equitable after considering all relevant factors including ... [t]he economic circumstances of each spouse at the time the division of property is to become effective," RCW 26.09.080(4), which is a "paramount concern." In re Marriage of Dessauer, 97 Wash.2d 831, 839, 650 P.2d 1099 (1982). The division need not be equal nor focus on mathematical preciseness: the goal of fairness is achieved "by considering all circumstances of the marriage and by exercising discretion, not by utilizing inflexible rules." In re Marriage of Tower, 55 Wash.App. 697, 700, 780 P.2d 863 (1989), review denied, 114 Wash.2d 1002, 788 P.2d 1077 (1990). Accordingly, a property division will stand on appeal unless there has been a manifest abuse of discretion. Konzen v. Konzen, 103 Wash.2d 470, 478, 693 P.2d 97, cert. denied, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).
The trial court noted that there was minimal property to divide here. Dawud received only a car, his pension benefits, and substantial debts. Cherry received what she had going into the marriage: household goods, a car, a career, her pension benefits, and some debts. The house was abandoned with each to share equally the deficiency, if any, after foreclosure. We cannot say that the division is a manifest abuse of discretion based solely on the disparate division of the pensions.
Cherry has not provided this court with enough information to evaluate the property division here. We were not provided with a full record; we do not know the values assigned by the court to the personalty in its distribution of assets. Yet Cherry, as the appellant, has the burden of providing *486 a sufficient record from which this court may review the issues. See Starczewski v. Unigard Ins. Group, 61 Wash.App. 267, 276, 810 P.2d 58, review denied, 117 Wash.2d 1017, 818 P.2d 1099 (1991). The importance of that requirement is exemplified by another excerpt of the trial court's oral ruling on the retirement accounts, which reads as though he also took into consideration the amount of personal property that each party took from the marriage:
from my perspective here in terms of looking at what's more important and what is fair and whatnot, if I award him all of the retirement account, it appears to me that even though I'm awarding all her retirement account, there is some difference in those values and awarding the personal property certainly isn't out of the question.
RP (Jan. 24, 2002) at 5-6. Without the full trial record, this court cannot completely determine the total amount of resources allocated to each party and the full factual situation warranting that division. Thus, based on the disparate division of the pensions alone and the limited record before us, we cannot hold that this constitutes a manifest abuse of discretion.

II. Protection Order's Effect
Cherry argues that the trial court erred when it considered the protective order when determining how to distribute the parties' pensions. The trial court noted that in its property division Dawud was receiving $8,800 more than Cherry. If the period of cohabitation contributions were included, an even split of the pensions, with no other property considerations, would have meant a payment of about $15,250 from Dawud to Cherry.[1] She claims that it was an abuse of discretion to base that disparate division on her choice to seek a permanent protective order. Our review is to determine the extent to which the trial court considered the protection order, and whether it was an abuse of discretion for a trial court to consider the effect of a protection order on the parties' earning capacity.
As noted above, one of the four articulated statutory factors in a marriage dissolution property division is the economic circumstances of each spouse upon dissolution. RCW 26.09.080(4). The protective order directly resulted in Dawud losing his job. Further, the court must make the division "without regard to marital misconduct." RCW 26.09.080; Washburn v. Washburn, 101 Wash.2d 168, 677 P.2d 152 (1984). Cherry complains that the judge used the fact that she obtained the protection order against her in the property division. This, in essence, is a claim that the court employed "fault" in dividing the propertyi.e., her fault in complaining and requesting a protection order resulted in a loss of income.
Of course, it is improper for a court to use fault in deciding the distribution of assets: no matter which party asserts blame or is blameworthy. Cherry's brief details the basis of the protection order and the assaults and threats by Dawud against her, and the record on appeal contains the complete decision of the court that imposed the permanent protection order. This is a patently obvious attempt to demonstrate and draw our consideration to the "marital fault" of Dawud.[2]
Just as it would be improper to use fault to punish Cherry, a court cannot favor Cherry in the property division because Dawud committed the acts that led to the protective order. That is, although Dawud may have brought this on himself, the court cannot attribute the loss of future earnings to Dawud and award more property to Cherry because he abused her and lost his job. Fault simply is not an appropriate issue when dividing property in a dissolution. The court must analyze the property and economic circumstances that existed as of the dissolution, and Dawud's unemployment was a relevant economic circumstance.
*487 In a similar case, In re Clark's Marriage, 13 Wash.App. 805, 538 P.2d 145, review denied, 86 Wash.2d 1001 (1975), the court examined whether the consideration of drinking and the expenditure of marital assets was an abuse of discretion in considering a trial court's disparate division. The court held:
evidence of Mr. Clark's drinking was not admitted to show marital misconduct or "fault," but to show the effect his drinking and consequent expenditure of funds had on the community assets....
RCW 26.09.080 requires the court to consider all relevant factors in arriving at a "just and equitable" distribution of property without regard to "marital misconduct." The "underlying purpose of the new Dissolution of Marriage Act is to replace the concept of `fault' and substitute marriage failure or `irretrievable breakdown' as the basis for a decree dissolving a marriage." However, the fact that "fault" is no longer a relevant query does not preclude consideration of all factors relevant to the attainment of a just and equitable distribution of marital property. The dissipation of marital property is as relevant to its disposition in a dissolution proceeding as would be the services of a spouse tending to increase[,] as opposed to decrease[,] those same assets.
Clark's Marriage, 13 Wash.App. at 808, 538 P.2d 145 (emphasis added) (quoting Hon. Nancy Ann Holman, A Law in the Spirit of Conciliation and Understanding: Washington's Marriage Dissolution Act, 9 GONZ. L.REV. 39 (1973)).
Similarly, the relevant economic circumstances here include Dawud's unemployability. Neither the text of the trial court's opinion nor its written findings reflect a causal link between the obtaining of the orderthe "fault" on the part of Cherryand the disparate property division as a punishment. The trial court may have been inartful in phrasing the facts and in discussing whether and to what extent Cherry was aware of the permanent order's effect on Dawud's economic condition; but the court dealt mainly with the economics of the parties as they were at the time of dissolution. The record shows no use of "fault" in the court's division of property. Therefore, the court did not err in referring to the effect of the protective order.
Both parties request attorney fees. We award none, either under RCW 26.09.140 or under RAP 18.9 (the appeal by Cherry was not devoid of merit).
Affirmed.
I concur: ARMSTRONG, J.
QUINN-BRINTNALL, A.C.J., (dissenting).
I agree with the majority holding that we will affirm a trial court's decision regarding property division unless there has been a manifest abuse of discretion. Majority Opinion at page 485 (citing In re Marriage of Konzen, 103 Wash.2d 470, 478, 693 P.2d 97, cert. denied, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985)). But because I believe the record demonstrates that the trial court abused its discretion in distributing the Muhammads' property, I must dissent.
A trial court abuses its discretion when it bases its decision on manifestly untenable or unreasonable grounds. In re Marriage of Friedlander, 80 Wash.2d 293, 298, 494 P.2d 208 (1972). Here, the trial court based its property distribution decision on the fact that Cherry Muhammad obtained a permanent domestic violence protection order against Dawud A. Muhammad. Although the trial court repeatedly stated that it was not trying to punish Cherry for seeking the order, the court's self-drafted finding belies this assertion.
The trial court amended the findings drafted by counsel and wrote:
By the Respondent [Cherry] obtaining a permanent domestic violence protection order against the Petitioner, [Dawud] A. Muhammad, said Petitioner no longer has the ability under Federal Law to own or use a weapon.
The ability to own and use a weapon is a condition of his employment through the King County Sheriff's Office or any other law enforcement agency.
As a result of the Petitioner's being unable to own or use a weapon, the Petitioner *488 has been terminated from his employment with the King County Sheriff's Office and is not eligible for any law enforcement position at this time.
The only work for which the Petitioner is qualified at this time is as a law enforcement officer and he is currently unemployed.
The Respondent knew, and has known for some considerable period of time, that by seeking and making the protection order permanent she would effectively terminate her husband's ability to work.
By virtue of the obtaining of the permanent domestic violence protection order the Petitioner's ability to obtain gainful employment or meaningful retirement benefits in the future is severely limited due to his education and training.
Clerk's Papers (CP) at 17 (emphasis added).
It is important to note that the implication of the trial court's findings, that Dawud is unemployable, is necessarily false. Someone who is capable of performing the duties of a law enforcement officer is also capable of other gainful employment. Moreover, the altercation that formed the factual basis for issuing the protection order involved an intoxicated Dawud threatening Cherry and her sister with a gun. According to the women's reports, he threatened to shoot Cherry and told her sister, "I'm gonna blow your brains out." CP at 69. This conduct demonstrated Dawud's unfitness to be a law enforcement officer, whether Cherry had the courage to report the abuse and seek a formal protection order or not.
Yet the court's findings inexplicably made Cherry responsible for Dawud's ineligibility for law enforcement jobs and then disproportionately distributed the Muhammads' property to Dawud as if he were unemployable. In my opinion, the trial court's property division decision rests on manifestly unreasonable and untenable grounds and should be reversed.
NOTES
[1] Br. of Appellant at 5-6. Over the course of cohabitation and marriage, Dawud's pension accrued $38,134 and Cherry's two pensions accrued $7,625. The difference is $30,509, half of which would go to Cherry if the court considered all of the pensions.
[2] Cherry can still sue Dawud for her injuries that caused her to seek a protection order. See Plankel v. Plankel, 68 Wash.App. 89, 841 P.2d 1309 (1992).