IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KARMELLE MARIE YERBURY,<br><br>    Respondent,<br><br>v.<br><br>DAVID THOMAS YERBURY,<br><br>    Appellant. | No. 84637-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

   COBURN, J. —  Appellant David Yerbury challenges the award of equity in a limited liability company and the valuation of several bank accounts, including two that were created without his spouse's knowledge.  From review of the record, the company was dissolved during the marriage, the valuation of two bank accounts reflect monies that no longer exist, and no basis exists as to the valuation of the third account.  While a trial court has broad discretion in determining how to distribute property fairly and equitably, if one or both parties disposed of an asset during the marriage, the court simply has no ability to distribute that asset at trial.  Accordingly, we reverse and remand for the trial court to reconsider, consistent with this opinion, the distribution of all assets.

Citations and pin cites are based on the Westlaw online version of the cited material

FACTS

David[1] and Karmelle Yerbury began dating in 1987. Karmelle worked a minimum wage job at a diner until she had their first child in 1995. After the birth of their son in 1998, David and Karmelle got married in 1999. The two agreed that Karmelle should stay at home to take care of the kids. During the marriage, David worked 14 years as a police officer and later became director of security for a casino in 2007.

During their marriage,[2] the couple maintained a TAPCO credit union checking account in David's name. Karmelle testified that she had unrestricted access to the TAPCO account through a debit card for anything she or the kids needed. Sometime during the marriage, David took access to the TAPCO account away.[3] From that point forward, bills would still automatically get paid from the account, but she would have to ask David for cash or have him directly pay for groceries. When their house went into foreclosure for a long-time outstanding missed payment, David gave Karmelle cash so she could get a cashier's check to pay the mortgage.

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity.

[2] Because David no longer challenges the date of separation on appeal, we need not address the facts that (or the legal significance of the facts that) David moved out of the house in 2008 but maintained family activities and relations.

[3] The parties dispute as to when access was taken away from Karmelle and why it was taken away. According to Karmelle, David took the debit card away in early 2018 after David was locked out from using it while trying to put gas in his car. Karmelle explained that she had apparently made too many transactions when she went to the casino. According to David, because of Karmelle's spending through either a debit card or a linked PayPal account, he restricted Karmelle's access to the TAPCO account in 2015 or 2016 by first taking Karmelle's debit card and then, after discovery of the PayPal withdraws, changing the TAPCO account numbers.

In 2008, David liquidated his police retirement account, taking out approximately $190,000 and investing $100,000 in Encore Development Group, Limited Liability Company (Encore) to open a nightclub for 25 percent equity in Encore. David maintains he placed the remaining $90,000 in a TAPCO savings account and planned to reinvest it, but that Karmelle removed about $75,000 over a year and a half. Encore was generally profitable between 2010 and 2017, and David received distributions of profits for those years while the nightclub was operating.

During the marriage, unbeknownst to Karmelle, David opened three accounts with Key Bank, two of which are relevant to this appeal. David opened (1) account ending in 0961 on April 8, 2015 with a $17,461.40 deposit, and (2) account ending in 7032 on June 6, 2018 with a deposit $46,410.59.

The nightclub ceased operating in 2017 and Encore dissolved. According to Jon Tartaglia, the managing member of Encore, the last date of business for Encore was April 29, 2017, and the date of Encore's dissolution was December 31, 2017. As reflected on admitted tax documents at trial, the last documented distribution from Encore to David in the record was for $35,420 in 2017, which was part of a $140,969 cash distribution to all partners. In 2017, the beginning balance of the partners' capital was $245,182. After accounting for a net income loss of $104,213 and distributions of $140,969, the partners' capital accounts balance at the end of 2017 was zero. Also admitted at trial was Encore's internal balance sheet, which stated that as of December 31, 2017, the company had a balance of $138,139.82 in cash, $25,182.64 in other current assets, $162,947.10

in fixed assets, and $23,363.24 in total current liabilities. Another internal balance sheet dated April 17, 2018 reflected similar figures. Both sheets listed the same distribution of partners' equity and draws. The sheets listed David's equity as $103,625.95 and draws totaling $21,250.

In August 2018, David filed a petition for dissolution of marriage in Puyallup Tribal Court and served Karmelle with the petition on October 3, 2018. The tribal court dismissed the petition for lack of personal jurisdiction over Karmelle, which David appealed but ultimately did not pursue. On April 16, 2019, Karmelle filed her own petition for dissolution in Pierce County Superior Court.

The court held a bench trial in November 2021. Both David and Karmelle testified.

Karmelle testified that she did not know about David opening the Key Bank accounts. She was not aware that David cashed out their police retirement fund and invested in a nightclub until three years after he did so. David conceded that he did not disclose in discovery the existence of any Key Bank accounts, which were obtained through third party subpoenas. David gave inconsistent testimony as to the Encore payout and the bank accounts, which will be discussed in more detail below.

No expert testified as to the meaning of the Encore balance sheets or tax documents. When Tartaglia was asked what the total cash was that was to be disbursed upon Encore being dissolved, Tartaglia explained that he did not turn to the balance sheets because

> it's not relevant to me. It's not relevant. I go to our checking
> account and see what we have. So my plan, my end plan was get

4

everything out of the space that we could and develop an asset list so the partners knew what we had left, pay all of our bills that we had remaining and then disburse the remaining funds according to the operating agreement.

The operating agreement is not in the record. Tartaglia was asked to confirm that "the only money that this company disbursed to [David] at the time the business was dissolved was $35,420." Tartaglia answered, "If that is the final check amount. I don't have that information with me, but I believe that to be correct, yes." When Tartaglia was told that David testified Encore's final distribution to him was $46,000 or $40,000, Tartaglia testified that he thought it was in that range but did not know for sure. Tartaglia conceded that he received a subpoena to present Encore's bank statements, which would have reflected the final payouts, but that he did not present such statements. Tartaglia testified that there is no more money retained in the business to be distributed later.

At the end of trial, Karmelle argued for a separation date of April 16, 2019 and proposed the court identify the bank accounts as community property and value them as follows: (1) $14,787.05 in the TAPCO account; (2) $17,461.40 in account 0961; and (3) $46,410.59 in account 7032. Karmelle also proposed listing equity in Encore as a community property with the value of $103,625.95. Karmelle proposed a 60/40 split of the community assets in her favor, which included awarding her the family home valued at $365,000 and awarding David the Encore equity and bank accounts.

David argued for a separation date of January 2008 and proposed the court adopt a 50/50 split while awarding him the TAPCO account as separate property at a value of $17,134. David did not include Encore in the property

5

distribution arguing that the company dissolved in 2017 and that, absent some evidence of direct tracing, the money had been exhausted. David did not include the Key Bank accounts, all opened after 2008, in the list of proposed assets.

In its oral ruling, the court announced that it was going to follow, for the most part, Karmelle's proposal. The court did disagree with her proposed date of separation and instead found that the marital community ended on October 3, 2018, because that was the day Karmelle was "served with the divorce papers from the tribal court." The court held that "[f]rom that date forward the parties stopped acquiring community property and incurring community debt." Without further explanation, the court also said it did not have a problem with the listing of Encore or the bank accounts. The court agreed with Karmelle's proposed percentage distribution of assets.

When Karmelle submitted her proposed orders, she did not change the proposed values of the bank accounts. David filed an objection pointing out that the balance in the bank accounts were different based on the separation date of October 3, 2018. David also reiterated that there was no equity in Encore because Encore dissolved in 2017.

Karmelle filed a reply to David's objection arguing that the value of the Encore equity is appropriate given the "credible evidence of value" presented by Karmelle and the "lack of credible evidence" presented by David. Karmelle argued that because David had "secreted" the Key Bank accounts and there was "no credible evidence of the source of these funds, how they were dissipated, or what their current disposition is," it was "appropriate to value the accounts at the

6

so-called high-water marks as it represents the total value of the community asset that was afforded to" David.

The court signed the pleadings as prepared by Karmelle explaining, without more, that they were "consistent with this Court's ruling." The court also imposed attorney's fees in the amount of $30,000 to be paid from David to Karmelle. David appeals.

DISCUSSION

David does not challenge the date of separation on appeal, the 60/40 split of assets, or the characterization of the Encore equity and the bank accounts as community property. He assigns error to two issues related to the distribution of property: (1) including equity in Encore as an asset when it no longer existed at the date of separation or at the time of trial, and (2) valuing the bank accounts higher than their values at the date of separation without providing any grounds for doing so. David argues the untenable decisions translated his award into an actual value of $100,000, less than 22 percent of the marital estate, as compared to an award of $366,813 for Karmelle.

"A party challenging a property distribution must demonstrate that the trial court manifestly abused its discretion." In re Marriage of Gillespie, 89 Wn. App. 390, 398, 948 P.2d 1338 (1997) (citing In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984)); In re Marriage of Terry, 79 Wn. App. 866, 869, 905 P.2d 935 (1995). Trial courts abuse their discretion when their decisions are manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

RCW 26.09.080 requires the court to consider all assets and liabilities of the parties to make a "just and equitable" disposition after considering the community property, separate property, duration of the marriage and the economic circumstances of the parties. "In making its property distribution, the trial court may properly consider a spouse's waste or concealment of assets." In re Marriage of Wallace, 111 Wn. App. 697, 708, 45 P.3d 1131 (2002) (citing In re Marriage of White, 105 Wn. App. 545, 551, 20 P.3d 481 (2001)). When exercising this broad discretion, the trial court focuses on the assets before it; in other words, it focuses on the parties' assets at the time of trial. White, 105 Wn. App. at 549. If one or both parties disposed of an asset before trial, the court simply has no ability to distribute that asset at trial. Id. The court is not required to divide community property equally. In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007) (citing White, 105 Wn. App. at 549).

<u>Equity in Encore</u>

David first contends that the trial court abused its discretion by distributing David's equity in Encore despite the fact it had been liquidated years before separation and trial. We agree.

Both David and Tartaglia testified that Encore was dissolved. David cites Kaseburg and White to support his contention that the court cannot divide assets that are not before it at the time of trial. In re Marriage of Kaseburg, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005); White, 105 Wn. App. at 551). In Kaseburg, the court held that the trial court abused its discretion when it awarded interest in the marital home to the wife in a dissolution even though the interest in the home

8

had already been extinguished in a foreclosure action 10 days before trial. Kaseburg, 126 Wn. App. at 561. In White, the court held that the trial court abused its discretion when it awarded the wife's inheritance that she received during the marriage as separate property, reasoning that the assets before the trial court for distribution were the family home and car that she bought with the inheritance. White, 105 Wn. App. at 551.

Like the assets in Kaseburg and White, the asset in the instant case, Encore, no longer existed at the time of trial based on uncontroverted testimony at trial. While the Encore internal balance sheets suggest the company maintained assets as late as April of 2018, that does not contradict Tartaglia's testimony at trial in 2021 that all payouts had been concluded and, though he is uncertain of the exact figure, he remembers David's payout to be an amount that was generally consistent with the $46,410.59 deposited in one of David's Key Bank accounts in June 2018.

Tartaglia conceded that he was served with a subpoena to provide Encore's bank statements and that the statements could clarify the exact payout amount and when it was distributed to David. However, even if the record is unclear as to what the final payout was to David and what he did with the distribution, that fact does not change the unchallenged testimony of Tartaglia that Encore was dissolved and there was nothing left to distribute. The trial court abused its discretion in awarding equity in Encore because the record establishes that the decision was based on untenable grounds.

<u>Bank Accounts</u>

David next contends that the court abused its discretion by distributing the bank accounts with values higher than the values at the date of separation. Based on this record, we agree.

Trial courts have broad discretion in picking a valuation date that is equitable. <u>Koher v. Morgan</u>, 93 Wn. App. 398, 404, 968 P.2d 920 (1998) (citing <u>Lucker v. Lucker</u>, 71 Wn. 2d 165, 426 P.2d 981 (1967)). David argues that the trial court should determine the value of the asset based on the date of separation.[4]

*A. TAPCO Account*

On the date of separation, October 3, 2018, the balance in the TAPCO account was $8,392.37. The court adopted a valuation of $14,787.05 without explanation. Karmelle simply argues that the court acted well within its discretion finding the $14,787.05 value for the TAPCO account to be an "equitable division date." Karmelle fails to cite to the record or provide substantive argument to explain the basis as to why the TAPCO account should be valued at the specific amount of $14,787.05. While the balance in the TAPCO account fluctuated, we cannot find anywhere in the record a balance of $14,787.05 associated with the TAPCO account. The court's decision to value the TAPCO account at $14,787.05 is untenable.

---

[4] We need not discuss David's proposed distribution because the only issue before us is whether the trial court abused its discretion in how it distributed the assets below.

*B. Key Bank Accounts*

On the date of separation, October 3, 2018, the balance in account 0961 was $548.10. It appears the court's assigned $17,461.40 value reflects the opening deposit from about three years earlier on May 2015. That same day, $16,906.65 was withdrawn leaving a balance of $554.75. Between August 7, 2015 and June 20, 2018, monies were both deposited and withdrawn from account 0961. This includes a $25,000 deposit on June 20, 2018 and a wire withdrawal of $24,763.89 the same day.

David had a hard time remembering he had multiple Key Bank accounts, but remembers going to the Key Bank branch in Fife with his daughter when she received money from the Puyallup Tribe of Indians, of which they were both members. David recalled that "while we were there at Key Bank at the branch in Fife, I opened a small account in my name. There was an extra – don't quote me to this, an extra $1,500, something from her account that we needed to – I can't remember why we had to push it over. So I opened an account, and they put a total of either $500 or $700 in that account in my name." David argues on appeal that the record shows that the almost $17,000 was only momentarily in the account belonging to his daughter.

On the date of separation, the balance in account ending in 7032 was $31,499.19.[5] It appears the court's adoption of the $46,410.59 value reflects the amount deposited four months earlier on June 6, 2018.

---

[5] David argued below that the balance in account ending in 7032 was $31,485.73 on September 6, 2018, but on appeal David recognized that interest and a service charge on October 3, 2018 brought the balance on that date to be $31,499.19.

David, who testified he was unaware he had three Key Bank accounts, could not remember which account he deposited the Encore payout into, when he received the payout, or the exact amount of the payout. When reminded of the account ending in 7032 and the $46,410.59 deposit, David eventually identified this deposit as coming from the Encore final payout.

David testified that he used the majority of the Encore payout to pay about $24,000 to get the family house out of foreclosure. Records show a $15,000 withdraw on June 20, 2018. The mortgage reinstatement quote through June 29, 2018, was $24,763.89.[6] David also testified that he thought he paid more in a lump sum with a check. When questioned about a letter from his mortgage company, David testified that he agreed it appeared the mortgage was brought current that same month with apparently a payment of $24,763.89. David conceded that he paid the mortgage reinstatement amount in a lump sum from the account but the statements of account 7032 did not reflect a similar lump sum payment. He admitted that he failed to disclose in discovery that he had Key Bank accounts, and that he could have provided a copy of the check of payment of the reinstatement amount from Key Bank.

David was not asked at trial whether the $24,763.89 wire withdrawal on June 20, 2018 from account ending in 0961 represented that reinstatement payment that was made. It was undisputed that the house was under foreclosure in 2018 and that David was the only person with an income during the marriage

---

[6] The record refers to Exhibit 105, which is identified as "Letter from Mortgage Company Dated 6/14/18."

who could pay the mortgage and the reinstatement amount.

Despite David's confusing testimony at trial, he argues on appeal that the record establishes a connection between the Encore distribution and the reinstatement payment. The TAPCO account reflects a $10,000 withdraw on June 19, 2018. David withdrew $15,000 from Key Bank account 7032 on June 20, 2018. The same day he deposited $25,000 in account ending in 0961, the same day the bank issued a wire transfer from that account for $24,763.89, the exact amount of the reinstatement payment.

However, the record also shows that account 7032 had no further deposits, but it did reflect additional post-separation withdraws: $10,000 on November 14, 2018; $10,000 on March 20, 2019; and $9,500 on July 10. The court did not make findings as to whether David used community funds from the Key Bank accounts to pay the reinstatement amount or whether the funds in the Key Bank accounts came from an Encore payout.

Without citing any authority, Karmelle argues that because it was undisputed that the Key Bank accounts were "secreted," community in nature, and controlled by only David, the court's valuation of the Key Bank accounts was equitable on that basis. Karmelle argues that as long as it is equitable, trial courts can pick any date of valuation. However, the cases she cites for that proposition do not hold that trial courts can pick a date from the past before the date of separation to capture assets that no longer exist at the time the court is distributing assets. These cases affirm valuations of assets that actually existed and could be valued either at the date of separation or at trial. See Lucker, 71

13

Wn.2d at 167 (proper to value real property on the date of trial rather than the date of separation where appellant increased the property's value through enhancements in the years following separation); Koher, 93 Wn. App. at 405 (not improper to value community real property at the time of trial instead of date of separation because it did not affect the distribution of appellant's separate property; Matter of Marriage of Shepard, No. 37508-1-III, slip op. at 12 (Wash. Ct. App. April 5, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/375081_unp.pdf[7] (not improper to set the date of valuation of parties' residence to be the date of separation instead of date of trial where one party had sole use of the home and maintained it and paid the mortgage while dissolution was pending for four years); Matter of Marriage of Sevigny, No. 36393-7-III, slip op. at 11 (Wash. Ct. App. June 16, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/363937_ord.pdf (no error in valuing a limited liability company at the time of trial instead of date of separation because appellant did not produce evidence that he used his separate earnings to purchase any of the real estate the LLC held that increased its value).

In the instant case, the actual money distributed is the asset from the past and that amount no longer exists. The court has no ability to distribute a non-existent asset. White, 105 Wn. App. at 549. Its decision was based on untenable grounds.

---

[7] GR 14.1(a) provides that unpublished opinions of the Court of Appeals have no precedential value and are not binding upon any court, but can be cited as non-binding authorities.

Karmelle argues that the court's distribution was just and equitable because David secretly opened accounts with community property, failed to properly account for the Encore payout, failed to adequately prove that the money deposited and withdrawn in account 0961 came from a separate source of funds for his daughter, and failed to adequately prove that the money withdrawn from account 7032 was actually spent for the benefit of the community. These arguments relate more to factors a trial court can consider in the *distribution* of existing community property as opposed to setting the value of non-existent property.

Courts have held that in order to attain a just and equitable distribution of community property, the trial court may determine whose labor or negatively productive conduct was responsible for creating or dissipating certain marital assets. In re Marriage of Steadman, 63 Wn. App. 523, 527, 821 P.2d 59 (1991) (citing In re Marriage of Clark, 13 Wn. App. 805, 808, 538 P.2d 145 (1975)). In Steadman, the trial court apportioned the $65,000 in tax obligations to the husband after considering his history of failing to pay taxes, his attitude toward taxes, an income tax return, and his lack of candor in regard to an additional bank account. 63 Wn. App. at 528. This court observed that the husband overstated the inequities, noting that the wife also had $18,000 in obligations despite not having an income and that the inequality that did result from the trial court's apportioning of liabilities was not an abuse of discretion. Id. at 528-29. In Clark, the trial court awarded twice as much community property to the wife than the husband. 13 Wn. App. at 809. This court affirmed the property division

15

because, among other reasons, the trial court found that the husband dissipated much of his earnings and was unable to account for $10,000 from the sale of community property. Id. at 811.

In both Steadman and Clark, the courts did not set the value of non-existent assets or liabilities based on how the parties had previously handled community assets. Those factors instead were properly considered in the courts' determination of how to divide existing assets and liabilities in a just and equitable way. The record in the instant case provides multiple examples of lack of candor by both parties and the dissipating of marital assets,[8] but the trial court failed to explain orally or in written findings and conclusions if it considered such factors in its determination of how property should be distributed.

CONCLUSION

Because the court's consideration of nonexistent assets influenced all aspects of its asset distribution, we reverse[9] the decree as to all asset distribution and remand for reconsideration based only those assets held at the time of the dissolution. Should any distribution be based on disputed facts, the court should make the necessary findings in its redetermination of what is a just and equitable

_____

[8] David never told Karmelle about the Key Bank accounts or disclosed their existence during discovery. It is unclear what happened to the post-separation withdraw of pre-separation community funds from Key Bank account 7032. Karmelle admitted she forged David's name to access and spend $6,000 of David's separate tribal money. The parties also do not dispute that Karmelle, during the marriage, won and spent a $34,000 casino jackpot without ever depositing the cash or telling David. The two disputed as to the timing of the winnings. Karmelle testified that it was "when [David] filed for divorce." David testified that it was before he filed for divorce and was one of the reasons he filed for divorce. The court made no findings as to this disputed fact.

[9] Because we reverse, we decline to grant Karmelle's request for attorney fees.

distribution.

_Cohen, J._

WE CONCUR:

_Chung, J._                _Andrus, C.J._