IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 86033-0-I |
| LAURIE REYNOLDS WINTERS, | DIVISION ONE |
| Appellant, | |
| and | UNPUBLISHED OPINION |
| ROBERT BRADLEY WINTERS, | |
| Respondent. | |

SMITH, C.J. — In 2019, the trial court entered a dissolution decree in the long-term marriage of Laurie and Robert Winters. Laurie moved for reconsideration, which the court granted in part. Laurie appeals, asserting that the trial court awarded Robert a disproportionate share of the marital estate; that the trial court mischaracterized community assets; and that the trial court abused its discretion in failing to award her spousal maintenance. Finding no error, we affirm.

FACTS

Laurie and Robert Winters married in August 1978.[1] They separated in November 2014, after 36 years of marriage. They share two adult children.

Laurie worked as a teacher at the beginning of the marriage, choosing to stay home once the children were born. After 10 years as a stay-at-home parent,

---

[1] We refer to the parties by first name solely for the purpose of clarity.

Laurie returned to teaching while the children were still in school. She earned her master's degree in education, with a focus on school counseling in 2007. At the time of separation, Laurie worked full-time as a school counselor for the Lummi Nation, making approximately $59,600. At the time of trial, Laurie had voluntarily reduced her hours to work part-time.

Robert also worked as a teacher for the majority of the marriage, acting as a school principal for the last four years. By the time of trial, Robert earned $95,972 annually. In addition to his full-time employment as an educator, Robert spent his summers fishing in Alaska. In the four years leading up to separation, he brought in an average net profit of $62,372 from the fishing.

Beyond each spouse's income, the parties' primary assets at separation consisted of the family home, an annuity, retirement accounts, a commercial fishing vessel and fishing permit, bank accounts, and future social security benefits. Both parties accrued debt and received inheritances after separating.

Laurie petitioned for dissolution in Whatcom County in November 2014. The dissolution proceeded to trial in February 2019. Following a two-day trial, the court issued a preliminary spreadsheet dividing assets and liabilities. Considering the income disparity, as well as the disparity in future social security benefits, the trial court awarded Laurie the home, the entirety of the annuity, and the retirement account in her name.

The court awarded Robert his defined benefit plan, the retirement plans in his name, the fishing boat he acquired after separation, and his fishing permit. Both parties retained any inheritance they received and the court divided the

2

shared Roth IRA accounts evenly. The court did not place any value on a fishing boat that sunk during the marriage, nor did it consider the parties' failed business venture to be an asset.

Balancing out the assets and liabilities, the court determined that Robert owed Laurie approximately $66,300, including a share of his additional fishing income and reimbursement for Laurie's refurbishments to the home. But because the court also determined that Laurie owed Robert a total of $56,000, including credit card charges and joint tax obligations, the court required that Robert pay only the $9,700 difference. The court denied Laurie's request for spousal maintenance.

Laurie timely moved for reconsideration, arguing that the court failed to equalize the parties' financial circumstances and incorrectly divided the parties' assets and future income. In October 2023, the trial court granted Laurie's motion in part, ordering Robert to pay an additional $65,000 to remedy an unintended disparity in the property award.

Laurie appeals.

## ANALYSIS

### Marital Estate

Laurie first asserts that the trial court abused its discretion in awarding Robert a disproportionate share of the marital estate based on the allocation of community and separate property. Robert disagrees, contending that the trial court actually granted Laurie a greater share. We agree that Laurie overstates

3

the value of the property awarded and conclude that the trial court did not abuse its discretion in distributing the marital estate.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." *In re Marriage of Wright*, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). As the trial court is in the best position to decide issues of fairness, " '[a] property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion.' " *In re Marriage of Larson and Calhoun*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013) (quoting *In re Marriage of Muhamad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005)). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Larson*, 178 Wn. App. at 138.

Before entering a dissolution decree, the trial court must consider the factors set forth under RCW 26.09.080, including: (1) the nature and extent of community property, (2) the nature and extent of separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at categorized as community or separate. *Wright*, 179 Wn. App. at 261, fn. 3.

In distributing property, the court's objective is to "place the parties in roughly equal financial positions." *In re Marriage of Rockwell*, 141 Wn. App. 235, 243, 170 P.3d 572 (2007). This does not require, however, that the trial court equalize the parties' income. *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 475, 421 P.3d 1046 (2018). And while a trial court may consider the future receipt of social security benefits in dividing property or awarding maintenance, it cannot

4

formally calculate the value of the social security benefits or use that valuation to balance out a property award. *In re Marriage of Zahm*, 138 Wn.2d 213, 221, 978 P.2d 498 (1999).

Here, Laurie contends that she raised significant and well-founded challenges to the trial court's allocation of the parties' community and separate property, especially concerning the allegedly disproportionate award to Robert. She does not elaborate upon these arguments however, stating only that she made them. She also fails to cite to the record to support her claim that Robert received more property. Laurie's unsupported claim is incorrect.

In calculating the awarded property, Laurie improperly relies on Robert's social security benefits and triple counts his inheritance. As noted above, although a trial court may consider a spouse's social security benefits to evaluate their economic circumstances in determining how to award property, it cannot actually award those benefits as assets. Laurie suggests that the trial court awarded Robert $400,000 in social security benefits, skewing the property split. But the trial court did not do so. In fact, the trial court acknowledged that Robert would receive more in benefits over time and used that to award Laurie a greater portion of the community property.

Additionally, Laurie overstates Robert's separate property award by triple counting his inheritance. In February and September 2018, Robert received an inheritance valued at approximately $105,000. In August 2019, Robert used the first installment, along with post-separation income, to purchase a $45,000

fishing boat. By December 2019, $85,215 remained of his inheritance and post-separation savings.

Laurie includes Robert's entire initial inheritance, his December 2018 balance, and the fishing boat in calculating his property award. As the latter two are both elements of the former, Laurie overstated Robert's award.

Because Laurie cannot establish that the trial court's property division, which actually provides her with well over half of the community property, is manifestly unreasonable, the trial court did not abuse its discretion in distributing the marital property.

### Characterization of Property

Laurie next claims that the trial court mischaracterized two separate investments as community obligations when they were uniquely within Robert's control and management. Robert maintains that the trial court did not abuse its discretion because neither investment was an asset available for distribution at the time of trial. Because neither asset was available for distribution and Laurie fails to establish that Robert's actions constitute waste, the trial court did not abuse its discretion in characterizing the assets as lost community assets.

In addition to the RCW 26.09.080 factors, courts may consider the dissipation of martial assets in distributing property. *In re Marriage of Williams*, 84 Wn. App. 263, 270, 927 P.2d 679 (1996). Washington courts recognize that consideration of each party's responsibility for creating or dissipating marital assets is relevant to the just and equitable division of property. *In re Marriage of Steadman*, 63 Wn. App. 523, 527, 821 P.2d 59 (1991); *In re Marriage of Clark*,

13 Wn. App. 805, 808-09, 538 P.2d 145 (1975). The burden rests on the party asserting wasting or dissipation. *Dizard & Getty v. Damson*, 63 Wn.2d 526, 529, 387 P.2d 964 (1964). Conduct may be wasteful if it willfully destroys or recklessly damages the asset at issue. *In re Marriage of Kaseburg*, 126 Wn. App. 546, 560, 108 P3d 1278 (2005). The trial court has discretion to consider whose "negatively productive conduct" depleted the couple's assets and to apportion a higher debt load or fewer assets to the wasteful marital partner. *Clark*, 13 Wn. App. at 809.

If an asset no longer exists at the time of trial, a court cannot distribute that asset. *In re Marriage of White*, 105 Wn. App. 545, 549, 20 P.3d 481 (2001). So, although a trial court may consider a spouse's waste of assets in its property division, "it is well settled that, '[w]hen exercising this broad discretion, a trial court focuses on the assets then before it – i.e., on the parties' assets at the time of trial.' " *Kaseburg*, 126 Wn. App. at 556 (alteration in original) (quoting *White*, 105 Wn. App. at 549).

In 2006, Robert invested $60,000 in a failed business venture to build a fish processing vehicle. He also purchased a fishing boat for $61,000, which sank in 2017. Laurie asserts that both investments were assets uniquely within Robert's control and management and therefore should have been considered a dissipation of cash assets rather than lost community assets. But neither the invested money nor the fishing boat was available for the trial court to distribute and Laurie failed to establish that Robert "wasted" the assets.

7

To the failed business venture, Laurie fails to establish that the investment constituted willful destruction or reckless damage so as to warrant a finding of waste. In fact, although Laurie claimed she was unaware of the investment, she testified that she believed it to be a "good idea." This does not indicate negatively productive conduct. Laurie continues on to assert that Robert's failure to obtain a promissory note evidencing the investment constitutes waste. But the record provides no evidence that a promissory note would have guaranteed recoupment of the investment. Simply the fact that the venture ultimately failed is not enough to establish waste.

Similarly, Robert's failure to reinsure the fishing boat does not constitute willful destruction or reckless damage. The record demonstrates that Robert attempted to reinsure the boat after filing his first insurance claim but struggled to do so. Laurie claimed at trial that Robert could have insured the boat through the Bristol Bay Reserve Pool, and therefore was willful in not doing so, but Robert testified that he only learned of the pool after the boat had already sunk. And if Laurie had been especially concerned about the lack of insurance, she could have insured the boat herself. As a community asset, both spouses owed the same duty to avoid wasting or dissipation.

Because neither asset was available at trial and Laurie fails to establish waste, the trial court did not abuse its discretion in characterizing the failed investment and sunk boat as lost community assets.

8

<u>Spousal Support</u>

Lastly, Laurie contends that the trial court abused its discretion in failing to award her spousal maintenance under RCW 26.09.090. Because the record displays that the trial court appropriately considered the relevant statutory factors, the trial court did not abuse its discretion failing to award spousal maintenance.

"[A] trial court exercises broad discretionary powers in awarding maintenance and its disposition will not be overturned on appeal absent a showing of manifest abuse of discretion." *In re Marriage of Wilcox*, 3 Wn.3d 507, 517, 553 P.3d 614 (2024). Again, a trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Wilcox*, 3 Wn.2d at 517.

RCW 26.09.090 governs spousal maintenance awards. Under RCW 26.09.090, the amount and duration of such maintenance must be just in light of the relevant factors. *In re Marriage of Condie*, 15 Wn. App.2d 449, 470, 475 P.3d 993 (2020). The non-exhaustive list of factors includes: the financial resources of the party seeking maintenance; the time necessary to acquire sufficient education or training to find employment; the standard of living established during the marriage; the duration of the marriage; the age, condition, and financial obligations of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet their own needs and financial obligations. RCW 26.09.090(1)(a-f). "Ultimately, the court's paramount concern must be the parties' economic conditions postdissolution." *Wilcox*, 3

Wn.2d at 521. That said, there is no "mandate for trial courts to predict the future, divide assets with mathematical precision, or guarantee future equality." *In re Marriage of Kaplan*, 4 Wn.App.2d 466, 476, 421 P.3d 1046, (2018). Rather, only maintenance not based on a fair consideration of the statutory factors is an abuse of discretion. *Wilcox*, Wn.3d at 521.

Laurie asserts that the trial court's primary concern should have been to place the parties in roughly equal financial positions for the rest of their lives. She contends that, in failing to award maintenance, the trial court could not have properly considered the statutory factors because they were married for 41 years, Robert's annual income is more than twice her own, and she did not work outside the home for 25 years of their marriage. But the record shows that, contrary to Laurie's contentions, the trial court did consider the length of the marriage and Robert's longer and more consistent employment history.

To the former, the trial court acknowledged the parties' "long-term marriage," providing that both were to receive roughly equal amounts of community property in addition to their own separate property.

To the latter, the court addressed Robert's employment history in its reference to social security. The court recognized that while both parties were nearing retirement age, Robert was likely to receive more social security income than Laurie would. As a result, the court granted Laurie a greater share of the community property to balance out this difference.

The court expressly considered both the length of the marriage and the employment differential while determining not to award spousal maintenance.

Because the trial court did consider the relevant statutory factors, the trial court did not abuse its discretion.

We affirm.

_Smith, C.J._

WE CONCUR:

_Chung, J._          _Bremmen, J_